**THORNBURGH INSULATION, INC., J.T.J.R., Inc., Thornburgh Abatement, Inc., Insulation Installments, Inc., and Firestop Technologies, Inc., Plaintiffs–Respondents,**

v.

**J.W. TERRILL, INC., and Travelers Indemnity Company, Defendant–Appellant.**

Nos. ED 89043, ED 89056.

Missouri Court of Appeals, Eastern District, Division One.

Sept. 18, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 18, 2007.

Application for Transfer Denied Nov. 20, 2007.

Michael Leslie Young, Gerard Thomas Noce, St. Louis, MO, Scott L. Schmookler, Randall Marmor, Chicago, IL, for Defendant-Appellant.

Stefen J. Glynias, St. Louis, MO, for Plaintiffs-Respondents.

KENNETH M. ROMINES, Judge.

### Introduction

Travelers Indemnity Company ("Travelers") appeals the judgment of the Circuit Court of St. Louis County, the Honorable Melvyn W. Wiesman presiding, in which the court granted summary judgment in favor of Respondents J.T.J.R., Inc. ("JTJR") and Thornburgh Insulation, Inc. ("Thornburgh") (collectively referred to as "the Companies"), on the Companies' breach of contract claim. The Companies cross-appeal the trial court's entry of summary judgment against them on their vexatious refusal to pay claim under RSMo. section 375.420 (2000).[1] This case turns on the definition of the term "occurrence" within the insurance policy provisions for employee dishonesty coverage at issue. This precise issue has not yet been addressed in Missouri. For the reasons set forth below, we reverse in part and affirm in part.

### Factual and Procedural Background

The Companies are two Missouri corporations, both owned by Mr. and Mrs. John and Christine Thornburgh. The Companies are both in the insulation and construction industry, and each handles a different type of insulation. Travelers is a foreign insurance company authorized to do business in Missouri. In 2001, the Companies each separately purchased commercial crime policies from Travelers through their independent insurance broker. The policies are substantively similar, and they contain identical coverage for employee dishonesty. The policies' limit of liability for each "occurrence" of employee dishonesty is $50,000. The policies define "occurrence" as:

> [A]ll loss caused by or involving, one or more 'employees,' whether the result of a single act or series of acts.

This case arises from the application of the above policy language to the following events. JTJR employed Ms. Linda Simmons as its office manager and bookkeep-

---

1. All statutory references are to RSMo. (2000) unless otherwise indicated.

er. JTJR paid her salary directly. Ms. Simmons also periodically did work for Thornburgh, as the companies often shared employees when needed. Thornburgh never directly compensated Ms. Simmons, but Thornburgh reimbursed JTJR for the wages Simmons earned while performing work for Thornburgh.

From 2000 through 2002, Ms. Simmons embezzled money from both JTJR and Thornburgh. She did so by making out a series of company checks to either of two fictitious corporations, applying the signature stamp of one of the owners, John or Christine Thornburgh, and depositing them into a bank account that she personally controlled. Ms. Simmons issued 37 fraudulent checks drawn on Thornburgh's account, resulting in an aggregate loss of $745,800; and 26 fraudulent checks drawn on JTJR's account, resulting in an aggregate loss of $508,350.

John Thornburgh discovered this embezzlement scheme on 19 November 2002. He notified Travelers on 25 November 2002 of the Companies' intention to seek recovery for the entire amount of loss to each company under the employee dishonesty provisions of the policies. In the following months, Travelers and Mr. Thornburgh exchanged correspondence and information regarding the claims for the purpose of Travelers' investigation of the claims. In July 2003, Travelers retained Studler, Doyle & Company, LLC ("SDC"), a forensic accounting firm, to conduct an independent investigation of the Companies' claims. SDC thereafter requested information regarding the claims from John Thornburgh, who replied that he had sent all of the information to Travelers already and he would not be sending anything more to SDC. On 29 July 2003, SDC sent reports to Travelers which confirmed the amounts of loss sustained by each company and the policies' limit of liability of $50,000 per occurrence of employee dishonesty. SDC did not reach a conclusion about whether Ms. Simmons was an "employee" of Thornburgh under the language of the policy, but SDC did note that her salary was paid by JTJR. Based on this report, Travelers issued a check for $50,000 to JTJR on 19 September 2003. Travelers later issued a check for $50,000 to Thornburgh on 16 October 2003.

The Companies sued under a breach of contract theory to recover the remainder of their losses, asserting each check was a separate occurrence of employee dishonesty and therefore they should recover the amount of loss up to $50,000 for each check. The Companies also sued under RSMo. section 375.420, claiming that Travelers' refusal to indemnify the Companies for each of Ms. Simmons' fraudulent checks, along with its delay and behavior in investigating the Companies' claims, warranted penalty under this statute.

On 19 July 2006, the Companies moved for summary judgment on their claims. Travelers responded by arguing that Ms. Simmons was not an employee of Thornburgh, and even if she was, Travelers had already fulfilled its obligations to both JTJR and Thornburgh through its payments of $50,000 to each. Travelers also moved for summary judgment as to all counts. On 5 October 2006, following a hearing, the trial court granted the Companies' motion for summary judgment and ordered Travelers to pay the full amount of loss to each company. As to the statutory vexatious refusal to pay claim, the trial court granted Travelers' motion for summary judgment. Travelers later moved the trial court to amend the judgment and reduce the award to the Companies, arguing that the Companies had recovered a portion of their losses through a settlement with their former accountants

and former bank.[2] The trial court denied this motion.

Travelers raises three points on appeal: 1) that Ms. Simmons' entire embezzlement scheme constituted one "occurrence" under the policy, and therefore the limit of liability to Travelers is $50,000; 2) that Ms. Simmons was not an "employee" of Thornburgh as defined by the policy, and therefore Travelers owes no indemnity to Thornburgh; and 3) in the alternative, the judgment should be reduced by the amount the Companies recovered through their settlement. The Companies cross-appeal the trial court's grant of summary judgment on their statutory claim.

### Standard of Review

We review the grant of a motion for summary judgment *de novo*. *Am. Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88, 89 (Mo. banc 2000) (citing *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). We view the record in the light most favorable to the party against whom judgment was entered, giving the non-movant the benefit of all reasonable references from the record. *Id.* Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.*

### Discussion

#### Definition of "Occurrence"

Travelers' first point on appeal requires us to construe the term "occurrence" in the commercial crime policy at issue. "If a term within an insurance policy is clearly defined, the contract definition controls," *State Farm Mut. Auto. Ins. Co. v. Ballmer*, 899 S.W.2d 523, 525 (Mo.1995); and the general rules of construction do not apply. *Am. Family Mut. Ins. Co. v. Ward*, 789 S.W.2d 791, 795 (Mo. banc 1990). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. banc 1992). However, the fact that the parties disagree as to the meaning of the policy does not give rise to an ambiguity. *Sanders v. Wallace*, 884 S.W.2d 300, 302 (Mo.Ct.App.E.D.1994).

As noted above, the insurance policies define *"occurrence"* as *"all loss caused by or involving, one or more 'employees,' whether the result of a single act or series of acts."* The Companies posit that because each fraudulent check required a series of actions including writing out the check, stealing the signature stamp, applying the signature stamp, and depositing the check, then this "series of acts" is one "occurrence."

We disagree. The definition makes clear that an "occurrence" consists of *"all loss"* caused by an employee (emphasis added). The Companies would have us determine that this plainly means *each* loss caused by Ms. Simmons, despite the facts that the issuance of each check was part of an overall scheme of embezzlement and

**2.** The Companies reached a settlement on 24 October 2006 with their former bank, Southwest Bank of St. Louis, and their former accountants, Lopata, Flagel & Company ("LFC"). The Companies had asserted claims against these parties for failing to discover Simmons' dishonesty. The settlement included $100,000 from Southwest Bank and $275,000 from LFC. The insurance policies at issue here included language concerning how outside recoveries for employee dishonesty claims are to be distributed. The parties disagree as to how these provisions should be applied to the settlement; however, we do not reach this issue because of our disposal of point one, *infra.*

each was carried out in a similar fashion.[3] Other courts that have dealt with this issue have found identical policies to be unambiguous. *Wausau Bus. Ins. Co. v. U.S. Motels Management, Inc.*, 341 F.Supp.2d 1180, 1184 (D.Colo.2004); *Bethany Christian Church v. Preferred Risk Mut. Ins. Co.*, 942 F.Supp. 330, 334 (S.D.Tex.1996). *See also Diamond Transp. Sys., Inc. v. Travelers Indem. Co.*, 817 F.Supp. 710 (N.D.Ill.1993). These courts also focus on the cause of the loss, finding that losses incurred through a common cause constitute one occurrence under the plain language of the definition. *Wausau*, 341 F.Supp.2d at 1183–84 (citing *Bus. Interiors, Inc. v. Aetna Cas. & Sur. Co.*, 751 F.2d 361 (10th Cir.1984)) ("Under this standard, the question is not whether the employee's various methods of embezzling were related, . . . but whether the cause of the loss was related"). *See also Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir.1982) ("The general rule is that an occurrence is determined by the cause or causes of the resulting injury.").

We similarly find no ambiguity in the definition.[4] Here, the cause of the losses to the Companies was an embezzlement scheme, consisting of a series of acts by one employee, Ms. Simmons. Therefore,

each company suffered only one occurrence of employee dishonesty. Each occurrence was subject to the limit of liability, which Travelers paid. Therefore, Travelers' first point is granted.

There being nothing more to dispose of once judgment is entered in favor of Travelers on this point, points two and three are denied as moot.

### Vexatious Refusal to Pay

The Companies argue that the approximately seven-month investigation by Travelers and the subsequent SDC investigation constituted an unreasonable delay in payment and was unreasonably redundant. Section 375.420 RSMo. provides:

[i]n any action against any insurance company to recover the amount of any loss under a policy of . . . fidelity, . . . if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen

---

3. Travelers asserted in its oral argument that "all loss" meant the aggregate of loss caused by a single employee, whether or not the acts were related as part of a common scheme or close in time to each other. The result is that there could never be more than one occurrence of loss caused by any one employee, even if the fraudulent acts were completely dissimilar and occurred remotely in time from one another. We do not reach that hypothetical situation because the case in front of us involves a related series of acts constituting one dishonest scheme. Furthermore, this hypothetical situation does not create an ambiguity in the policy language. *See Green v. Federated Mut. Ins. Co.*, 13 S.W.3d 647, 649 (Mo.App.E.D.2000) (policies must be

construed in light of the present facts, and hypothetical situations cannot be used to create an ambiguity).

4. The Companies' alternatively ask us to find the policy language ambiguous and construe it in favor of the insured. However, this argument is based on an unpublished opinion from the Federal District Court for the Eastern District of Missouri. Besides being of no authority here, the court there construed a policy that contained no definition of "occurrence." *See Acid Piping Tech., Inc. v. Great N. Ins. Co.*, 2005 WL 3008512 (E.D.Mo.). We find no case law supporting the position that this definition of "occurrence" is ambiguous.

hundred dollars and a reasonable attorney's fee. . . .

To recover under this section, a party must show that the "insurer's refusal to pay was willful and without reasonable cause as it would appear to a reasonable and prudent person." *Smith ex rel. Stephan v. AF & L Ins. Co.*, 147 S.W.3d 767, 778 (Mo.Ct.App.E.D.2004). Furthermore, "[t]here may be no vexatious refusal where the insurer has reasonable cause to believe and does believe there is no liability under its policy and it has a meritorious defense." *Wood v. Safeco. Ins. Co. of Am.* 980 S.W.2d 43, 55 (Mo.Ct.App.E.D.1998). Finally, we construe this statute strictly because it is penal in nature. *Smith*, 147 S.W.3d at 778.

The Companies argue that two aspects of Travelers' conduct merit penalty under this statute: 1) Travelers' refusal to pay the full amount of loss caused by each fraudulent check; and 2) Travelers' delay in payment coupled with its claims adjusters' attitudes. *See Smith*, 147 S.W.3d at 778 (acknowledging possibility that an insurer's recalcitrant attitude may allow for recovery under statute). Viewing the facts in the light most favorable to the Companies, we deny their cross-appeal.

■ As to the first argument, Travelers' refusal to pay more than the limit of liability for the events at issue here cannot be considered vexatious under this statute. Travelers had reasonable cause to believe it had a meritorious defense to paying the full amount based on the definition of "occurrence," especially because there have heretofore been no Missouri cases on point. *See Hocker Oil Co., Inc. v. Barker-Phillips-Jackson, Inc.*, 997 S.W.2d 510,

523 (Mo.App.S.D.1999) (lack of case law on point precludes vexatious refusal to pay claim). Therefore, refusal to pay anything more than the limit of liability was not vexatious.

■ As to Travelers' handling of these claims before any payment, we do not find any evidence of a recalcitrant attitude on the part of the insurance company.[5] Travelers began its investigation on 16 December 2002, and the Thornburghs sent their proof of loss forms and documentation to Travelers on 6 March 2003. On 2 May 2003, Travelers requested more information, including copies of the monthly bank statements during the time period of the losses. The Companies acknowledge in their brief that they responded to this request on 3 June 2003 with all of the requested documentation except for two months' worth of bank statements and Ms. Simmons' personnel file. Travelers hired SDC in July, and SDC sent a letter requesting several items and asking for clarification as to some information already provided. Mr. Thornburgh replied that he had already provided all of that information to Travelers.

Although some of the requested information may have been duplicative, we find no evidence in the record beyond the assertion in Mr. Thornburgh's letter to SDC that Travelers already had all of this information. The delay from the time of SDC's report to Travelers' payment to JTJR was less than two months. We do not find this to be unreasonable.

### Conclusion

We find that the definition of "occurrence" is unambiguous in light of these

5. The Companies attribute recalcitrance to Travelers' statement in its initial letter that the claim requires "a high standard of proof and documentation" because of its "accusatory nature." We disagree with the Companies' conclusion that this meant Travelers applied a "higher" standard of proof to their claim without cause, and we see no recalcitrance in Travelers' relaying of its standard of proof for this type of claim.

facts, showing that the respective losses to JTJR and Thornburgh came as the result of one occurrence of employee dishonesty. Therefore, the Companies were not entitled to judgment as a matter of law. As such, we reverse the trial court's entry of summary judgment. We find Travelers was entitled to judgment as a matter of law, thus we remand to the trial court with instructions to enter judgment in favor of Travelers.

Finding no genuine factual dispute or error of law, we affirm the trial court's grant of summary judgment in favor of Travelers on the statutory claim.

REVERSED AND REMANDED IN PART; AFFIRMED IN PART.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concur.