**Brian HALL, Respondent,**

**Alyson Hall, Respondent/Cross–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Appellant/Cross–Respondent.**

**Nos. ED 97990, ED 98073.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 11, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 24, 2013.

Application for Transfer Denied Oct. 1, 2013.

604

Daniel T. Rabbit, Marcus J. Raymond, St. Louis, MO, for appellant.

Joan M. Lockwood, St. Louis, MO, for respondents.

LAWRENCE E. MOONEY, Presiding Judge.

Allstate Insurance Company appeals the trial court's ruling permitting the stacking of underinsured motorist benefits under an Allstate policy held by Brian and Alyson Hall. Because we hold that the policy unambiguously prohibits stacking of underinsured coverage, we reverse the trial court's ruling.

### Factual and Procedural Background

Brian Hall sustained serious, permanent, progressive, and disabling bodily injuries as a passenger in a motor vehicle that was hit by tortfeasor Lorraine Guth. Mr. Hall and his wife sued Ms. Guth. Ultimately, the parties reached an agreement.[1] Ms. Guth agreed to the entry of a judgment holding her liable to the Halls for compensatory damages. The Halls agreed that said judgment would not constitute a judgment lien upon Ms. Guth's personal assets. The trial court approved the agreement and, after a damages hearing, entered judgment in favor of the Halls and against Ms. Guth in the amount of fifteen million dollars. The Halls, with the approval of their insurance company Allstate, accepted and exhausted Ms. Guth's policy limits. Mr. Hall, however, sustained damages far exceeding the amount collected.

---

1. The parties made their agreement pursuant to Section 537.065.

The Halls filed a claim seeking underinsured motorist coverage provided in a policy of insurance issued to them by Allstate. The policy insured a total of four vehicles owned by the Halls, three of which were insured with underinsured motor coverage. The policy declaration pages listed these three vehicles separately, and listed each vehicle with underinsured motorist coverage limits of $50,000 for each person and $100,000 for each accident. Allstate charged, and the Halls paid, three separate premiums for the underinsured motorist coverage on the three vehicles.

After the Halls filed a declaratory-judgment action, the Halls and Allstate each moved for summary judgment. All agree that Mr. Hall should recover under his underinsured motorist coverage with Allstate. The parties disagree, however, on the amount of coverage the policy affords. The Halls argue that the underinsured coverage for the three vehicles should stack, to provide a total of $150,000 in coverage for Mr. Hall. They contend the policy expressly provides for stacking by virtue of a sentence in the limits-of-liability section, which states that underinsured motorists coverage limits apply to each insured auto shown on the declarations page. Alternatively, they contend that an ambiguity exists by virtue of the "other insurance" provision, and as such, the policy must be construed in their favor to allow stacking of coverage.

Allstate, on the other hand, argues that provisions against combining limits in the general section of the policy, as well as anti-stacking language in the underinsured section of the policy, expressly, uniformly, and unambiguously prohibit stacking.

Therefore, in Allstate's view the total amount recoverable under the policy is $50,000.[2]

The trial court concluded that the policy afforded underinsured motorist benefits on all three vehicles, and accordingly entered summary judgment in favor of the Halls, and against Allstate, in the amount of $150,000. Allstate appeals.

### Standard of Review

The propriety of summary judgment is a question of law, and our standard of review on appeal is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.;* Rule 74.04.

Summary judgment is frequently used in the context of insurance coverage questions. *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308, 312 (Mo.App. E.D.1999). The interpretation of an insurance policy is a question of law that this Court determines *de novo*. *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010).

### Insurance Law

Several rules guide our interpretation of insurance policies. The key is whether the policy's language is ambiguous or unambiguous. *Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007) (citations omit-

---

**2.** The parties also disputed whether Mrs. Hall was entitled to recover separate underinsured motorist benefits for her loss-of-consortium claim. The summary-judgment court ruled that she was not, and entered judgment against her. The Halls appeal that decision.

By summary order, we affirm. Rule 84.16(b)(5). An opinion would have no precedential value. We have, however, provided the parties with a separate memorandum, for their information only, explaining the reasons for our decision.

ted). In making this determination, we consider the language in light of the meaning that would normally be understood by the layperson who bought and paid for the policy. *Ritchie v. Allied Property & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Maune*, 277 S.W.3d 754, 757 (Mo.App. E.D.2009). Further, we evaluate policies by reading the policy as a whole. *Id.* We do not evaluate policy provisions in isolation. *Ritchie*, 307 S.W.3d at 135.

■■■ "Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, we will enforce the policy as written." *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). On the other hand, when we find an insurance policy's language ambiguous, we apply the rules of construction and we will construe the ambiguous provision against the insurer. *Id.*; *Maune*, 277 S.W.3d at 758. An ambiguity exists in an insurance policy when, due to duplicity, indistinctness, or uncertainty in the meaning of the words used, the policy is open to differing reasonable constructions. *Maune*, 277 S.W.3d at 758 (citations omitted). The mere fact that the parties disagree as to the meaning of a term or clause in an insurance policy does not give rise to an ambiguity. *Thornburgh Insulation, Inc. v. J.W. Terrill, Inc.*, 236 S.W.3d 651, 655 (Mo.App. E.D.2007). Similarly, we may not "unreasonably distort the language of the policy or exercise inventive powers for the purpose of creating an ambiguity when none exists." *Todd*, 223 S.W.3d at 163.

■■■ The instant dispute involves stacking of underinsured motorist coverage. " 'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Ritchie*, 307 S.W.3d at 135 (quoting *Niswonger*, 992 S.W.2d at 313). Underinsured motorist coverage refers to coverage "intended to provide a source of recovery for insureds (up to the insurer's liability limit for such coverage) who have been bodily injured by a negligent motorist whose own automobile liability insurance coverage is insufficient to fully pay for the injured person's actual damages." *Niswonger*, 992 S.W.2d at 313; *Krombach*, 785 S.W.2d at 733. Underinsured motorist coverage is in the nature of floating personal accident insurance that follows the insured individual wherever he goes rather than insurance on a particular vehicle. *Niswonger*, 992 S.W.2d at 313.

■■■ Missouri law differentiates between uninsured and underinsured motorist coverage. All policies of automobile insurance in this state must provide uninsured motorist coverage. Section 379.203; *Ritchie*, 307 S.W.3d at 135. Public policy flowing from this statutory requirement requires that multiple uninsured motorist coverages must be allowed to be stacked. *Niswonger*, 992 S.W.2d at 313; *Ritchie*, 307 S.W.3d at 135. Insurers are prohibited from including policy language denying such stacking. *Id.* Such is not the case with underinsured motorist coverage. Missouri statutes do not mandate underinsured motorist coverage. *Id.* No public policy requires the stacking of underinsured motorist coverage. *Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 383 (Mo. banc 1991); *Niswonger*, 992 S.W.2d at 313–14. Consequently, the contract entered into between the insurer and insured determines the existence of underinsured motorist coverage and its ability to be stacked. *Rodriguez*, 808 S.W.2d at 383. Because Missouri statutes do not require

underinsured motorist coverage, and because no public policy requires that such coverage be stacked, insurers may include anti-stacking provisions in their policies. *See Rodriguez*, 808 S.W.2d at 383. "An anti-stacking clause prohibits the insured from collecting on multiple coverage items or policies from the same insurer for a single · accident." *Long v. Shelter Ins. Companies*, 351 S.W.3d 692, 696–97 (Mo. App. W.D.2011) (internal quotation omitted). In effect, an anti-stacking clause makes only one policy or coverage amount collectable. *Id.* If the policy language is unambiguous in disallowing stacking, the anti-stacking provisions are enforceable and this Court will not create such extra coverage. *Ritchie*, 307 S.W.3d at 135; *Niswonger*, 992 S.W.2d at 314. If, however, the policy language is ambiguous as to stacking, then we will construe the policy in favor of the insured and allow stacking. *Id.*

▆ The starting point in determining the rights and liabilities of the parties is the insurance contract. *Ragsdale v. Armstrong*, 916 S.W.2d 783, 784 (Mo. banc 1996). So, against this backdrop of the general law and legal principles applicable to the interpretation of insurance policies and underinsured motorist coverage in Missouri, we will now consider the relevant provision of the specific policy at hand.

### *The Policy*

Under the General Provisions section of the policy, the following provision regarding combining limits is included:[3]

**Combining Limits of Two or More Autos Prohibited**

The coverage limits applicable to any one **auto** or **utility auto** shown on the Policy Declarations will not be combined with or added to the coverage limits applicable to any other **auto** or **utility auto** shown on the Policy Declarations or covered by the policy. This means that no stacking or aggregation of coverages will be allowed by this policy. This is true even though a separate premium is charged for each of those **autos** or **utility autos**. This is true regardless of the number of:

1. Vehicles or persons shown on the Policy Declarations;

2. vehicles involved in the accident;

3. persons seeking damages as a result of the accident; or

4. insured persons from whom damages are sought.

If two or more **autos** or **utility autos** are shown on the Policy Declarations and one of these **autos** or **utility autos** is involved in an accident to which coverage applies, the coverage limits shown on the Policy Declarations for the involved auto will apply. If a covered accident involves an **auto** other than one shown on the Policy Declarations, or if an insured person is struck as a pedestrian in a covered accident, the highest coverage limits shown on the Policy Declarations for the applicable coverage for any one **auto** will apply.

Part 4 of the policy, entitled "Underinsured Motorists Insurance Coverage SU," includes the following general statement of coverage:

**General Statement of Coverage**

If a premium is shown on the Policy Declarations for Underinsured Motorists Insurance, we will pay damages which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured auto** because of **bodily injury** sustained by an **insured person.**

---

**3.** All emphases in the quoted provisions are in the original.

**The bodily injury** must be caused by accident and arise out of the ownership, maintenance, or use of an **underinsured auto**. **We** will not pay any punitive or exemplary damages, fines or penalties under Underinsured Motorists Insurance.[4]

The Underinsured Motorists Insurance Coverage part of the policy contains the following limits of liability provision:

**Limits of Liability**

The coverage limit shown on the Policy Declarations for:

1. "each person" is the maximum that **we** will pay for all damages arising out of **bodily injury** to one person in any one **motor vehicle** accident, including all damages sustained by anyone else as a result of that **bodily injury.**

2. "each accident" is the maximum **we** will pay for all damages arising out of **bodily injury** in any one **motor vehicle** accident. This limit is subject to the limit for "each person."

Those limits are the maximum **Allstate** will pay for any one **motor vehicle** accident regardless of the number of:

1. premiums paid;
2. premiums shown on the Policy Declarations;
3. claims made;
4. vehicles or persons shown on the Policy Declarations; or
5. vehicles involved in the accident.

4. The policy defines an "underinsured auto" as:

a motor vehicle which has liability protection in effect and applicable at the time of the accident in an amount equal to or greater than the minimum financial security requirements in the state of Missouri, but less than the damages the **insured person** is legally entitled to recover.

An "insured person" for purposes of underinsured motorist coverage is defined as:

THIS MEANS THAT NO STACKING OR AGGREGATION OF UNDERINSURED MOTORISTS INSURANCE WHATSOEVER WILL BE ALLOWED BY THIS POLICY.

The Underinsured Motorists Coverage limits apply to each **insured auto** as shown on the Policy Declarations.

. . .

The Underinsured Motorists Insurance Coverage part of the policy also contains a provision regarding "other insurance." We shall set out that provision below, in our discussion regarding that provision.

### Discussion

Allstate contends that the policy language unambiguously prohibits stacking of underinsured benefits. We agree. The policy uniformly and consistently prohibits stacking of underinsured coverage. First, the general section entitled "Combining Limits of Two or More Autos Prohibited," explicitly states in clear and unequivocal terms that the coverage limits applicable to any one auto shown on the policy declarations "will not be combined with or added to" the coverage limits applicable to any other auto shown on the policy declarations. Then, in direct and straightforward terms, the policy states: "This mean no stacking or aggregation of coverages will be allowed by this policy." Continuing, this same section specifically provides that the prohibition against stacking holds true regardless of the number of vehicles or

a. **you** and any **resident** relative
b. any person while in, on, getting into or out of, or getting on or off of, an insured **auto** with **your** permission
c. any other person who is legally entitled to recover because of **bodily injury** to **you**, a **resident** relative, or an occupant of **your** insured **auto** with **your** permission.

persons shown on the policy, and even though a separate premium is charged for each automobile shown on the policy declarations. Finally, this same section also states that if a covered accident involves an automobile other than one shown on the policy declarations, as is the case here, then "the highest coverage limits shown on the policy declarations for the applicable coverage for any one auto will apply." This section of the policy uniformly, clearly, and unambiguously disallows the stacking of coverages sought by the Halls.

The prohibition against stacking continues in the section dealing specifically with underinsured coverage. There, in the "limits of liability" provision, the policy specifically states that the coverage limit shown on the policy declarations for each person is the maximum Allstate will pay for any one motor vehicle accident regardless of the number of premiums shown or paid, claims made, or vehicles or persons shown on the declarations. Then, in prominent all-capital letters, the policy states: "THIS MEANS THAT NO STACKING OR AGGREGATION OF UNDERINSURED MOTORISTS INSURANCE WHATSOEVER WILL BE ALLOWED BY THIS POLICY." This clause, written in a way to draw attention to itself, is clear, direct, straightforward, and uniformly consistent with all the other language in the policy that unambiguously and unequivocally prohibits the stacking of coverages.

The Halls advance two arguments for stacking: first, the policy expressly provides for stacking, and second, an ambiguity exists in the policy. For the proposition that the policy expressly provides for stacking, the Halls point to the general statement of coverage, the declarations showing three insured automobiles, and a sentence included in the "limits of liability" provision. The general statement of cov-

erage provides that Allstate will pay damages that an insured person is legally entitled to recover if the policy declarations reflect a premium for underinsured coverage. The limits-of-liability sentence, which the Halls call critical to their argument, and which directly follows the above-quoted all-capital anti-stacking clause, reads: "The Underinsured Motorists Coverage limits apply to each insured auto as shown on the Policy Declarations." From these provisions, the Halls posit that because the policy declarations show three insured autos, and because the policy expressly states that the underinsured coverage limits apply to each insured auto, then three underinsured limits apply, in the amount of $50,000 for each vehicle, for a total of $150,000 in coverage.

■ We disagree. To begin, nothing in this language speaks to stacking. The relied-upon limits-of-liability sentence is not artfully penned, and its inclusion in the policy is somewhat perplexing. Nevertheless, Allstate states the purpose of this sentence is to make clear that the "limits of liability" section applies to each individual automobile shown on the policy declarations. We find this the more reasonable and logical interpretation of the sentence. To an extent, the Halls look past portions of the policy and read the sentence in isolation. We, however, must evaluate policies as a whole, and read as a whole, the policy clearly, uniformly, and unambiguously prohibits stacking of coverages, regardless of the number of cars insured or number of premiums paid. Moreover, the clause in all capital letters expressly prohibiting stacking of underinsured motorist coverage immediately precedes the relied-upon sentence. An average layperson could not read that provision in all capital letters prohibiting stacking and reasonably conclude from the very next sentence that the policy allows stacking. The relied-

upon sentence comes at the end of the section setting forth the limits of liability for underinsured motorist coverage. The policy covers multiple automobiles. The sentence does nothing more than reinforce that the aforementioned limits apply to each of those automobiles.

The Halls also contend that the policy contains an ambiguity. For this proposition, they point to the "other insurance" provision included in section of the policy dealing specifically with underinsured coverage. The provision reads:

**If There Is Other Insurance**

If the **insured person** was in, on, getting into or out of, or on or off of, a vehicle which is insured for underinsured motorists or similar type coverage under another policy, coverage under Underinsured Motorists Coverage, Part 4 of this policy, will be excess. This means that when the **insured person** is legally entitled to recover damages in excess of the other policy limit, **we** will pay up to **your** policy limit, but only after the other insurance has been exhausted. No **insured person** may recover duplicate benefits for the same elements of loss under this coverage and the other insurance.

If more than one policy applies to the accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit of underinsured motorists coverage. This will apply no matter how many autos or auto policies may be involved whether written by Allstate or another company. We will bear our proportionate share with other underinsured motorists coverage.

The Halls argue that this "other insurance" provision is an excess clause, and then point to the *Ritchie* decision, in which the Court concluded that an excess clause stating that coverage is "excess" coverage over "any other collectible underinsured motorist coverage" is "more likely to create the impression that underinsured motorists coverage can be stacked." *Ritchie*, 307 S.W.3d at 139. The Halls summarily conclude that the excess clause in their policy directly conflicts with the capitalized, anti-stacking clause included in the "limits of liability" provision. The Halls contend a reasonable person could read the "other insurance" provision to mean that underinsured motorist coverage is excess and stackable to other underinsured motorist coverage, and conclude that the "other insurance" language prevails over the conflicting anti-stacking clause. Thus, they argue, because an ambiguity exists, stacking of underinsured motorist coverage must be allowed.

We disagree. While the factual background of *Ritchie* is quite similar to this case, the policy language is readily distinguishable. In *Ritchie*, as here, the insureds held a policy that insured three vehicles. Each vehicle was insured with underinsured motorist coverage. The insured paid three separate premiums for the vehicles, including separate premiums for the underinsured motorist coverage. As here, the insureds sought recovery of underinsured motorist coverage, and asserted that they were entitled to stack that coverage. The policy contained an "other insurance" provision that said coverage was "excess over any other collectible underinsured motorist coverage." In finding that coverage was stackable, the Court reasoned that a person reasonably could interpret this provision to mean that when there were multiple underinsured motorist coverages, as in that policy, then each of the underinsured motorist coverages was excess to the other, and, therefore, may be stacked. This directly conflicted with the policy's anti-stacking language. Accordingly, the conflict created an ambiguity, resolved in favor of the insureds. *Ritchie*, 307 S.W.3d at 137–38. Here, however, the

policy language is different and states that coverage is excess to "underinsured motorists or similar type coverage under another policy." The policy language refers to underinsured motorist coverage in some other, separate policy, not other coverage within the same policy, as was the case in *Ritchie.* An ordinary person could not reasonably interpret the "other insurance" provision in this case to mean that each of the underinsured motorist coverages provided by the Allstate policy are excess to the other, such that they may be stacked. Thus, no conflict arises between the "other insurance" provision and the policy's anti-stacking clause. With no ambiguity created, we enforce the policy as written—and as written, the policy prohibits stacking.

We affirm the trial court's summary judgment that denied recovery of separate underinsured-motorist-benefits from Mrs. Hall's loss-of-consortium claim. We reverse the trial court's summary judgment that permitted stacking of underinsured motorist benefits.

PATRICIA L. COHEN, J., and KURT S. ODENWALD, J., concur.