

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| ADRIENNE SIDDENS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD84141 |
| | ) | |
| PHILADELPHIA INDEMNITY | ) | Opinion filed: August 10, 2021 |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**
**THE HONORABLE JONATHAN JACOBS, JUDGE**

Division Three: Gary D. Witt, Presiding Judge,
Mark D. Pfeiffer, Judge and W. Douglas Thomson, Judge

Adrienne Siddens ("Siddens") appeals the trial court's grant of summary judgment in favor of Philadelphia Indemnity Insurance Company ("PIIC"). In her two points on appeal, Siddens challenges the trial court's legal conclusion that Decedent did not qualify as a "Named Insured" under the Policy. We affirm.

## Factual and Procedural History

On May 5, 2019, Decedent was picking up traffic cones following a road race sponsored by his employer, Ultramax Events, LLC ("Ultramax"). Ultramax was covered by an insurance policy from PIIC which provided automobile liability

coverage (the "Policy"). A co-employee of Decedent was driving an Ultramax-owned truck alongside the roadway while Decedent placed the traffic cones into the bed of the truck. While performing these duties, Decedent was struck by an uninsured motorist at a speed of approximately 70 miles per hour. As a result of the catastrophic injuries he sustained, Decedent was completely incapacitated for approximately six months and ultimately died. On December 6, 2019, Decedent's wife, Siddens, filed a petition for wrongful death of Decedent against the uninsured motorist and PIIC.

The Policy provided uninsured motorist insurance ("UM") coverage to Ultramax. On page 1 of the UM coverage portion of the Policy, "USA Track & Field Event Directors" ("Event Directors") is identified as the "Named Insured." Ultramax is one of these Event Directors.[1]

In the Policy, Section B., Who Is An Insured, provides an "if/then" approach to determining insureds for UM coverage. It discerns insureds by first determining if the Named Insured is designated as a "partnership, limited liability company, corporation, or any other form of organization," or simply an individual. Based on this determination, the Policy identifies who is an insured.

The Policy incorporates an amendment which adds additional insureds under the UM coverage, in addition to those falling within Section B. of the Policy. It states:

---

[1] The Event Directors are a collection of fourteen separate and distinct entities which sponsor running events. According to the schedule of Event Directors, the entities include: (1) Buffalo Erie Marathon Association; (2) Great Race, LLC; (3) Palm Beaches Marathon, LLC d/b/a K2 Sports Ventures; (4) Kinane Events, LLC; (5) Laughing Rhino Events, LLC; (6) M3S Sports LLC; (7) New Mexico Association of USA Track & Field, Inc.; (8) Quest Equities, LLC d/b/a Lifestyle Escapes; (9) Strider Events, LLC; (10) Tiburon Endurance Sports, Inc.; (11) The Woodlands Marathon Management, LLC; (12) Bark Eater Events, LLC; (13) Ultramax Events, LLC; and (14) Zoom Multisport Racing, LLC.

For the COMMERCIAL AUTOMOBILE COVERAGE PART, Who Is An Insured is amended to include USA Track & Field Event Directors enrolled in this program and scheduled on the attached PI-MANU-1 (09/06) – SCHEDULE OF COVERED EVENT DIRECTORS, **and their respective employees**, volunteers or any other permissive user while using a covered auto with permission from a covered event director.

(Emphasis added).[2]

Pertinent to this appeal, the Policy provides UM coverage with limits of $1,000,000 for each "covered auto." Section D. of the Policy provides the Limits of Insurance. Section D.1. provides that if bodily injury is sustained by any person other than an individual Named Insured, the limit of UM coverage is $1,000,000. Section D.2. provides that if bodily injury is sustained by an individual Named Insured and there are two or more automobiles "covered," then PIIC will pay "the sum of limits applicable to each covered 'auto,'" commonly called "stacking."[3] Thus, for any *insured* who is not an *individual Named Insured*, the applicable policy limit is $1,000,000.

The parties agreed to a partial settlement of $1,248,980.36, which has already been paid to Siddens. This did not end their litigation, however, for Siddens argues Decedent is an *individual Named Insured* who is entitled to stack the UM coverage limits. PIIC, on the other hand, asserts Decedent was not covered as an individual Named Insured, but rather as an insured, and thus, the coverage cannot be stacked.

---

[2] Further reference to the Policy in this opinion incorporates and includes the Amendment.

[3] "'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured individual has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured individual has one policy which covers more than one vehicle." *Hall v. Allstate Ins. Co.*, 407 S.W.3d 603, 607 (Mo. App. E.D. 2012) (citing *Ritchie v. Allied Property & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009)).

3

The parties also agreed to allow the trial court to decide whether Siddens may stack the UM coverage available as a Named Insured. There are seven "covered autos" owned by Ultramax, each with $1,000,000 of UM coverage. Hence, the applicable policy limit for an individual Named Insured would be $7,000,000, while the policy limit for Decedent if he is not an individual Named Insured would be $1,000,000.

To that end, Siddens and PIIC filed competing motions for summary judgment, thereby allowing the trial court to address the underlying issues related to the question of stacking. The trial court entered summary judgment in favor of PIIC, finding that UM coverage had been exhausted.

Siddens appeals. Further factual details will be provided as relevant in the analysis below.

## Standard of Review

"Insurance policy interpretations are questions of law that appellate courts review *de novo*." *Warden v. Shelter Mut. Ins. Co.*, 480 S.W.3d 403, 405 (Mo. App. W.D. 2016) (citing *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). "Where the trial court granted summary judgment, we also apply a *de novo* standard of review." *Id.* (citing *Long v. Shelter Ins. Companies*, 351 S.W.3d 692, 695-96 (Mo. App. W.D. 2011)). "In construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." *Id.* (citing *Seeck v. Geico General Ins. Co.*, 212 S.W.3d at 132). "Language is ambiguous if it is reasonably open to different constructions." *Id.*

4

## *Point I*

In her first point on appeal, Siddens argues that the trial court erred in granting PIIC's motion for summary judgment because PIIC failed to establish that Decedent is not a Named Insured under the Policy. Siddens contends that by specifically incorporating the phrase "and their respective employees" into the Amendment which modifies who is an insured, PIIC has made the employees of Ultramax, all of whom are, of course, individuals, Named Insureds. Siddens then reasons that since Decedent is an individual who is a Named Insured, the Policy permits her to stack the UM coverage applicable to each of the six additional automobiles. Siddens argues that at the very least the Policy language is ambiguous as to who is a Named Insured.[4]

To begin, "[s]everal rules guide our interpretation of insurance policies." *Hall v. Allstate Ins. Co.*, 407 S.W.3d 603, 606 (Mo. App. E.D. 2012).

> The key is whether the policy's language is ambiguous or unambiguous. In making this determination, we consider the language in light of the

---

[4] Siddens' point relied on fail to comply with Rule 84.04(d). Rule 84.04(d) provides that each point shall: "(A) identify the trial court ruling or action that the appellant challenges; (B) state concisely the legal reasons for the appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(1) additionally sets out the specific format for a point relied on when the review is of a decision of a trial court: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error.*].]" "This rule is not a judicial word game or a matter of hypertechnicality, rather it serves to notify the opposing party of the precise matters under contention and inform our Court of the issues presented for review." *Carmen v. Olsen*, 611 S.W.3d 368, 371 (Mo. App. E.D. 2020). Siddens' point fails to follow the format set out in the rule. It is not "concise" nor does it provide legal support in a "summary fashion." Instead, it is nearly a page long, includes case law applicable to our standard of review, and continues to develop arguments as it flows. Failure to comply with Rule 84.04 preserves nothing for review. *Id.* at 372. However, because we prefer to decide cases on their merits, and because we can readily discern Siddens' point relied on, we exercise our discretion to address the merits of her appeal. *Cityview Real Estate Servs., LLC v. K.C. Auto Panel, Inc.*, 576 S.W.3d 187, 191 (Mo. App. W.D. 2019).

meaning that would normally be understood by the layperson who bought and paid for the policy. Further, we evaluate policies by reading the policy as a whole. We do not evaluate policy provisions in isolation.

*Id.* at 606-07 (citations and quotations omitted).

In analyzing uninsured motorist coverage, Missouri courts have "distinguish[ed] between named insureds and occupancy insureds . . . ." *Linderer v. Royal Globe Ins. Co.*, 597 S.W.2d 656, 660 (Mo. App. E.D. 1980). Our Supreme Court elaborated on these terms of art in *Hines v. Gov't Employees Ins. Co.*, 656 S.W.2d 262, 265 (Mo. banc 1983), explaining that "[t]he coverage for the named insured is not dependent on the presence in an insured vehicle at the time of an accident involving an uninsured motorist, but is also applicable if the named insured is a pedestrian, or is riding in someone else's automobile." It follows that "[f]or a named insured, and his or her relatives, stacking is mandatory and required . . . ." *Kertz v. State Farm Mut. Auto. Ins. Co.*, 236 S.W.3d 39, 42 (Mo. App. E.D. 2007). However,

> [i]t does not necessarily follow that an injured occupant [an occupancy insured] who is not the owner must have recourse to all the uninsured motorist coverage the owner of the car in which he or she is present was required to pay for . . . The insurance company and the owner of the automobile should not be disabled from entering into a contract which confines the uninsured motorist coverage available to an occupancy insured to that covering the vehicle in which he or she is riding at the time of the accident.

*Hines v. Gov't Employees Ins. Co.*, 656 S.W.2d at 265. Thus, "[f]or all other parties [other than the Named Insured] injured while driving or occupying the named insured's vehicle, the limiting clause of the policy controls." *Kertz v. State Farm Mut. Auto. Ins. Co.,* 236 S.W.3d at 42.

6

Here, the *Named Insured* is identified by proper name, "USA Track & Field Event Directors," in the Policy where it states "Named Insured: USA Track & Field Event Directors." Hence, throughout the Policy where Named Insured is used, it refers to USA Track & Field Event Directors. Ultramax is a Named Insured by virtue of being one of the Event Directors listed on the schedule of Event Directors attached to the Policy. In fact, Siddens herself identifies Ultramax as a Named Insured from the inception of this case.[5] Notably, in defining the Named Insured, the Policy does not identify Decedent or any other individuals by name.

In contrast to Named Insureds, additional insureds are identified by being a member of a defined group contained within the policy when analyzing uninsured motorist coverage. An insured's eligibility for payment under the policy arises solely by meeting the criteria for being an insured. *See generally Linderer v. Royal Globe Ins. Co.*, 597 S.W.2d at 661. These insureds have been referred to as "occupant insureds" by our courts in reviewing uninsured motorist coverage cases. *See Kertz v. State Farm Mut. Auto. Ins. Co.*, 236 S.W.3d at 42. Here, the Policy defines an "insured" as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." The last paragraph of the Amendment to the Policy adds a group of persons to the class of insureds, as follows:

> For the COMMERCIAL AUTOMOBILE COVERAGE PART, Who Is An Insured is amended to include USA Track & Field Event Directors enrolled in this program and scheduled on the attached PI-MANU-1 (09/06) – SCHEDULE OF COVERED EVENT DIRECTORS, and their

---

[5]At paragraph 22 of her petition, she states "[t]he [PIIC] policy . . . was issued to USA Track & Field Event Directors of which Ultramax . . . was a named insured on the Schedule of Event Directors."

7

respective employees, volunteers or any other permissive user while using a covered auto with permission from a covered event director.

Hence, as an employee of Ultramax "using a covered auto with permission from a covered event director" at the time of the collision, Decedent fell into the class of occupant insureds.[6]

Siddens asserts that in stating "Event Directors . . ., and their respective employees . . .," the Amendment makes such employees Named Insureds because they are employees of the Named Insured, Ultramax. However, the Amendment definitively states that "Who Is An Insured is amended to include . . . Event Directors . . . and their respective employees . . . ." No reasonable interpretation of the Amendment allows an employee of a Named Insured to become a Named Insured, himself.

Siddens further argues that the Policy is ambiguous as to who is a Named Insured. In light of our analysis and determination that Named Insured and insureds are clearly defined and distinguishable by the Policy language, this argument fails. We find there is no ambiguity in the Policy as to the defined term, Named Insured. "The mere fact that the parties disagree as to the meaning of a term or clause in an insurance policy does not give rise to an ambiguity." *Hall v. Allstate Ins. Co.,* 407 S.W.3d at 607 (citing *Thornburgh Insulation, Inc. v. J.W. Terrill, Inc.*, 236 S.W.3d 651, 655 (Mo. App. E.D. 2007)).

---

[6]We recognize that "occupant insured" is a misnomer for Decedent, who is an insured by virtue of being an employee of Ultramax, not as a result of *occupying* the Ultramax vehicle. However, the language of the Amendment results in such an employee being in the class we have commonly addressed as occupant insureds.

Accordingly, Decedent is not a Named Insured, and the Policy is not ambiguous as to who is a Named Insured.  The trial court did not err.  Point I is denied.

### *Point II*

In his second point, Siddens contends that the trial court erred in granting PIIC's motion for summary judgment because PIIC's interpretation of the Policy renders entire paragraphs and sections of its UM coverage endorsement entirely meaningless, contradictory, and ambiguous as a matter of law in that that Policy "mandates that coverage for bodily injury shall be stacked" for Named Insureds, yet only the Event Directors are Named Insureds, and, as organizations, they themselves cannot sustain bodily injury.[7]

Our conclusion that Decedent does not fall within the Policy provisions which define a Named Insured in Point I, however, is dispositive of Point II.  As Siddens readily admits in the conclusion of her reply brief, "[t]he only question for this Court to decide is whether [] Siddens, an employee of Ultramax, was a Named Insured . . . ."  We have found the trial court did not err in its determination that Siddens is not a Named Insured.  Hence, the stacking issue set forth becomes irrelevant as the Policy clearly restricts stacking to individual Named Insureds.

 Point II is denied.

---

[7] See Note 4, *supra.*

## Conclusion

The judgment entered by the circuit court is affirmed.


_____
W. DOUGLAS THOMSON, JUDGE

All concur.