Nathaniel James MANNER, Appellant,

v.

Nicholas Brian SCHIERMEIER, Con–Tech Foundations, LLC, Helmet City, Inc., and Jafrum International, Inc., Defendants,

American Family Mutual Insurance Company, and American Standard Insurance Company, Respondents.

No. SC 92408.

Supreme Court of Missouri, En Banc.

Jan. 8, 2013.

Gretchen Garrison, Maurice B. Graham, Morry S. Cole, Gray, Ritter & Graham PC, St. Louis, for Appellant.

Robert J. Wulff and Mary Anne Lindsey, Evans & Dixon LLC, St. Louis, for Respondents.

LAURA DENVIR STITH, Judge.

Nathaniel Manner appeals the trial court's grant of summary judgment to American Family Mutual Insurance Company and American Standard Insurance Company (the insurers) on Nathaniel's[1] claim that he is entitled to $400,000 in underinsured motorist coverage under the four policies he holds with those insurers. He alleges that the trial court erred in holding that the policies' owned-vehicle exclusions unambiguously applied to the Yamaha motorcycle that he was riding at the time of the accident. This Court agrees. The insurers chose not to define the term "owned" in the policies. The burden was on the insurers to prove that the owned-vehicle exclusion applied, which they failed to do. This Court rejects the insurers' suggestion that the facts that Nathaniel had an insurable interest and possession of the motorcycle unambiguously showed he "owned" the vehicle as that term is used in the policy. Here, Nathaniel's uncle retained title and still was receiving payments from Nathaniel at the time of the accident. Any ambiguity in the meaning of "owned" vehicle must be construed against the insurer.

Because the insurers fail to show that the owned-vehicle exclusion applies, the question becomes whether Nathaniel may stack the underinsured motorist coverages provided in each of the four policies in determining whether the tortfeasor was underinsured and in determining the amount of underinsured motorist coverage to which he is entitled. This Court finds that the "other insurance" provisions of the four policies permit him to do so. Finally, because his unrecovered damages exceed the total liability limits of the stacked policies, the insurers are not entitled to offset the amount recovered from other tortfeasors against those liability limits. The judgment is reversed, and the case is remanded.

## I. STATEMENT OF FACTS

On September 25, 2004, Nathaniel, then 23 years old, suffered extensive bodily injury while riding a Yamaha motorcycle when it was hit by a vehicle driven by Nicholas Schiermeier (the "tortfeasor"). Nathaniel sued the tortfeasor, asserting the latter negligently caused the collision. The tortfeasor's insurance company paid its $100,000 limit of liability to Nathaniel.

The insurer and Nathaniel have agreed for purposes of this suit that the value of his claim for damages is $1.5 million. Nathaniel's $100,000 recovery from the tortfeasor, therefore, left him with $1.4 million in unpaid damages. He sought additional recovery for his injuries under the $100,000 underinsured motorist coverage

1. To avoid confusion, the appellant hereinafter is referred to as Nathaniel to distinguish him from the other members of the Manner family.

endorsement of the American Family policy he had purchased for the Yamaha motorcycle and under the $100,000 underinsured motorist coverage endorsements of each of the additional American Family insurance policies he had purchased for his two trucks—a Ford Ranger and a Ford F150. He also sought recovery as an additional insured on the $100,000 American Standard policy his father, James Manner, maintained for a Suzuki motorcycle.[2]

Both insurers denied coverage under all of these four policies. Nathaniel then joined both insurers as additional defendants, alleging that he was entitled to recover under the underinsured motorist endorsements of all four policies and that their limits could be stacked to provide him with $400,000 in coverage.

The insurers moved for summary judgment, arguing that the policies for the three vehicles other than the Yamaha that Nathaniel was operating at the time of the accident could not apply because the policies covering Nathaniel's two Ford trucks and his father's Suzuki each contained an "owned-vehicle" exclusion that precluded coverage under the underinsured motorist endorsement. These owned-vehicle exclusions state: "This coverage does not apply for bodily injury to a person: … While occupying, or when struck by, a motor vehicle *that is not insured under this policy if it is owned by you* or any resident of your household." (emphasis added). The insurers claimed that Nathaniel owned the Yamaha and that, because it was insured under a different policy than the ones insuring the other three vehicles, this owned-vehicle exclusion precluded coverage under those policies.

Additionally, the insurers claimed that none of the policies' underinsured motorist endorsements applied as to any of the four policies because the tortfeasor's vehicle did not come within the definition of an "underinsured" vehicle as that term in used in those policies. In support, the insurers argued that a vehicle is considered "underinsured" only if the coverage for it is less than the coverage in the insured's policy. Here, because the four policies under which Nathaniel claimed coverage and the tortfeasor's policy each had identical $100,000 limits, the insurers allege the tortfeasor's vehicle cannot be considered "underinsured" and, therefore, Nathaniel is not entitled to recover under any of the underinsured motorist endorsements of any of the four policies.

Nathaniel countered that the insurers did not meet their burden of showing that he owned the Yamaha, nor that he resided in his father's household; therefore, the owned-vehicle exclusion did not apply. Instead, he argued, the policies' "other insurance" clauses permitted him to stack their coverages, and, under Missouri law, it is the total of stacked coverage that must be compared with the tortfeasor's coverage to determine whether the latter is underinsured. Nathaniel cross-moved for summary judgment.

The trial court denied Nathaniel's motion but granted summary judgment in favor of the insurers. Nathaniel appealed. After an opinion by the court of appeals, this Court granted transfer pursuant to art. V, sec. 10 of the Missouri Constitution.

## II. STANDARD OF REVIEW

Whether summary judgment is proper is an issue of law that this Court

2. The Suzuki policy provides underinsured motorist coverage to James Manner and a "relative," defined as someone related to James by blood, marriage or adoption, unless either is injured when occupying a vehicle owned by James or "any resident of his household" but not insured by the policy.

reviews *de novo*. The Court reviews the record in the light most favorable to the party against whom judgment was entered, without deference to the trial court's findings, and accords the non-movant "the benefit of all reasonable inferences from the record." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

## III. STACKING OF THE POLICIES IS PERMITTED

*A. The Insurers did not Meet their Burden of Showing that Nathaniel Owned the Yamaha Motorcycle*

■ The · four policies all contain $100,000 in underinsured motorist coverage. The insurers claim that the owned-vehicle exclusion to this coverage applies, however, because Nathaniel owned the Yamaha motorcycle he was riding at the time of the accident. The burden of showing that an exclusion to coverage applies is on the insurer. *Burns v. Smith*, 303 S.W.3d 505, 510 (Mo. banc 2010) ("Missouri also *strictly* construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies") (emphasis in original).

The record shows Nathaniel's uncle had agreed to sell him the motorcycle and allowed him to take possession of it. Nathaniel responsibly obtained insurance coverage for the motorcycle before driving it. But, at the time of the accident, Nathaniel still was in the process of paying his uncle for the Yamaha, his uncle still retained title, and he did not yet consider it his own: when police arrived at the accident scene, Nathaniel explained that the motorcycle belonged to his uncle.

■ The insurers argue that even though Nathaniel did not have title to the vehicle or other indicia of ownership of it, they met their burden by showing that he had possession of and an interest in the Yamaha sufficient to allow him to obtain an insurance policy on it. Insurers cite no authority for their proposition that an insurable interest is equivalent to ownership, and this Court has found none. Such a definition could lead to conflicting claims and confusion because persons other than an owner can have sufficient interest in property to insure it. For example, the uncle who was selling the vehicle also had an insurable interest in it. Indeed, both a rental or leasing company and the person renting or leasing a vehicle or other item have an insurable interest in the car or other item rented and have some possessory interest in it. This does not make the renter the owner of the car, however, at least not in the absence of a contract provision so defining "ownership" for purposes of the contract.

While the insurance policies at issue could have defined "owned," for purposes of the underinsured motorist endorsement,[3] to include all those who have an insurable interest in the vehicle, they did not do so. The insurers chose to use the term "owned" in the policies' underinsured motorist endorsement but not to define it. The term accordingly "will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy." *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992).

"Owner" is defined generally as "one that has the legal or rightful title whether the possessor or not." WEBSTER'S THIRD

---

**3.** As to *uninsured* motorist coverage, this Court long has held that "§ 379.203 mandated uninsured motorist coverage and that the parties were not free to enter into a contract which had the effect of diminishing the coverage the statute required." *Shepherd v. American States Ins. Co.*, 671 S.W.2d 777, 778 (Mo. banc 1984).

NEW INTERNATIONAL DICTIONARY 1612 (1961). Additionally, "own" often is defined as "belonging to oneself or itself" or "to have or hold as property or appurtenance: have rightful title to, whether legal or natural: possess." *Id.* While the meaning of "owned" may vary in particular circumstances, case law similarly indicates that it usually involves establishing either title, *see, e.g., Case v. Universal Underwriters Insurance Company*, 534 S.W.2d 635 (Mo. App.1976) (title establishes a rebuttable presumption of ownership), or the power to "voluntarily destroy, encumber, sell, or otherwise dispose" of the property, *see, e.g., Lightner v. Farmers Ins. Co., Inc.*, 789 S.W.2d 487 (Mo. banc 1990) (finding ownership on this basis). No case or dictionary has been identified that defines "ownership" and "possession of an insurable interest" as equivalences.

The insurers had the burden of showing that the term "owned" in the endorsement unambiguously included Nathaniel's situation. At best, the term is ambiguous as used in the policy, and any ambiguity will be interpreted in favor of the insured. *See Burns*, 303 S.W.3d at 509 (multiple meanings for a term suggest that the word itself is ambiguous if not defined). The insurer failed to meet its burden of showing that the owned-vehicle exclusion applied.[4]

*B. The "Other Insurance" Provisions Permit Stacking To Determine the Existence and Amount of Underinsured Motorist Coverage*

■ All four policies under which Nathaniel claims coverage define an "underinsured motor vehicle" as "a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits *less* than the limits of liability of this Underinsured Motorists coverage." (Emphasis added). The burden is on the insured to show coverage is provided under this provision. *Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 792 (Mo.App.2006); *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 470 (Mo.App.1986).

The insurers argue that the four $100,000 policies covering Nathaniel should be compared individually with the coverage provided by the tortfeasor's policy to determine whether the latter's vehicle was underinsured. If this is done, the insurers argue, then as each policy provides the same $100,000 limit as did the tortfeasor's policy, the tortfeasor was not underinsured under any of the policies, none of the underinsured motorist endorsements apply and there are no policy coverages to stack.

The insurers' argument explicitly was rejected by this Court in *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129 (Mo. banc 2007). There, as here, the insurer argued that this Court should find that "the tortfeasor's vehicle does not come within the definition of 'underinsured motor vehicle' in the [insurer's] policy" because the limits of liability of both policies were the same if stacking was not permitted. *Id.* at 132–33. This Court held that to so hold was inconsistent with the long-standing policy of this Court to consider policy provisions as a whole rather than to look at them *seriatim*, as the insurer effectively requested. *Id.* at 133.

This Court further explicated this long-standing policy in *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132 (Mo. banc 2009), in rejecting a similar argument:

Missouri has long followed the rule that an insurance policy must be read as

---

4. Because of the Court's resolution of the owned-vehicle exclusion issue, it will not address the additional arguments made by insurers that were premised on a determination that this exclusion did apply.

a whole, not provision by provision. Although insurers often seek to have courts interpret each provision independently, that is not consistent with Missouri's longstanding approach. *Seeck* is only the latest case to apply this rule to a situation such as this where the other insurance clause appears to provide coverage that the limitation of liability clause is argued to prohibit; any resulting ambiguity will be construed against the insurer.

*Ritchie, id.* at 138 n. 5.

■ Numerous court of appeals cases have followed similar reasoning,[5] and this Court reaffirms this principle here. In determining what coverage is provided for purposes of determining the applicability of underinsured motorist coverage, a court first must determine whether the policy permits coverage from multiple policies to be stacked. If so, then the coverage provided by the policies is their stacked amount, not the amount each would provide if considered separately, and it is the stacked amount that must be compared against the insurance coverage of the tortfeasor.

■ This approach is consistent with the fact that one of the purposes of underinsured motorist coverage is to provide the insured with the coverage the insured purchased when the excess amount is necessary to cover damages. When insurance policies permit stacking, such as Nathaniel argues is the case here, the coverage contracted for is the total of the policy limits when stacked.

Here, it is conceded that if the policies are stacked, the tortfeasor is underinsured. Accordingly, this Court turns to whether the policies permit stacking. Stacking of insurance policies refers to:

An insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle.

*Ritchie*, 307 S.W.3d at 135.

As applied here, this definition means that, if the underinsured motorist endorsements of Nathaniel's policies permit stacking, then he can recover the sum total of the policy limits of the stacked policies, here $400,000, up to the amount of damages remaining after recovery from the tortfeasor. If stacking is not permitted, he will be limited to the $100,000 amount of recovery of each policy considered singly because each policy contains an identical $100,000 limit of liability.

The insurers argue that stacking is prohibited by a "Two or More Cars Insured" clause in each policy, which provides:

The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy. When this policy insures two or more cars, the coverages apply separately to each car.

Here, each vehicle was insured under its own policy, and therefore the second clause of this "Two or More Cars Insured" provision does not apply.[6] The insurers

**5.** *See, e.g., Chamness v. American Family Mutual Ins. Co.,* 226 S.W.3d 199, 205 (Mo.App. 2007); *American Family Ins. Co. v. Ragsdale,* 213 S.W.3d 51, 54–55 (Mo.App.2007); *American Economy Ins. Co. v. Cornejo,* 866 S.W.2d 174, 178 (Mo.App.1993).

**6.** Each policy also has a similar clause stating that coverage for two or more motorcycles must be considered separately, but for the reasons noted above, Nathaniel does not come within the definition of "owned;" therefore, that provision also is inapplicable.

claim, however, that the first clause of the "Two or More Cars Insured" provision expressly precludes stacking the liability limits of the four policies.

 The insurers' argument ignores the fact that the underinsured motorist endorsements to each policy also each contain an "other insurance" clause providing:

If there is other similar insurance on a loss covered by this endorsement, we will pay our share according to this policy's proportion of the total limits of all similar insurance. *But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance.*

This Court's analysis of a similar "other insurance" clause in *Ritchie* is dispositive here. In *Ritchie*, the insurer claimed that stacking was precluded by a clause stating that the limit of liability shown on the declarations page was the maximum the insurer would pay regardless of the number of claims or premiums. But, this Court noted, this was inconsistent with the policy's "other insurance" clause, which stated:

OTHER INSURANCE

If there is other applicable underinsured motorists coverage available under one or more policies or provisions of coverage:

. . . .

(2) Any coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorist coverage.

*Ritchie,* 307 S.W.3d at 136–37.

 As just noted, it is well-settled in Missouri that "courts should not interpret policy provision in isolation but rather evaluate policies as a whole." *Ritchie, id.*

at 137. Conflicts and inconsistencies between different policy provisions, with one seeming to deny coverage but the other seeming to grant it, will render a policy ambiguous, and such an ambiguity will be interpreted in favor of the insured. *Id.*

Applying those principles to the case before it, *Ritchie* held that even if when read in isolation the "limits of liability" clause precluded stacking in certain other situations, when read together with the other insurance clause, an "ordinary person of average understanding" reasonably could conclude that the "other insurance" clause set out an exception to this antistacking provision "in the special situation where the insured is injured while occupying a non-owned vehicle." *Ritchie, id.* at 137, *quoting Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.,* 992 S.W.2d 308, 315 (Mo.App.1999). *Accord, McCormack Baron Mang. Servs. Inc. v. American Guarantee & Liability Ins. Co.,* 989 S.W.2d 168, 171 (Mo. banc 1999).

More specifically, *Ritchie* said, an insured reasonably could interpret the words of the "other insurance" clause stating "Any coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorist coverage" to mean that "when an injured insured is occupying a non-owned vehicle and there are multiple underinsured motorist coverages, as it is conceded there are here, then each of the underinsured motorist coverages are excess to the other, and, therefore, may be stacked." *Ritchie,* 307 S.W.3d at 137–38.

*Ritchie* found that this made the insurance policy ambiguous as to whether stacking was permitted in the case of underinsured motorist coverage and, therefore, permitted the insured to stack these coverages.[7]

7. *Accord, Chamness,* 226 S.W.3d at 203–08

(when the same "Two or More Cars Insured"

Similarly, here, the second sentence of the "other insurance" clause appears to an "ordinary person of average understanding" to permit stacking because it states that "any coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorist coverage." To the extent that this is inconsistent with other provisions of the policy such as the "Two or More Cars Insured" provision, the resulting ambiguity must be resolved in favor of the insured. *See, e.g., Seeck,* 212 S.W.3d at 133–34. Stacking is permitted under the four policies.

### C. Offset is Not Permitted.

Insurers assert that, because the limits of liability provision in the policies' underinsured motorist endorsement states that underinsured motorist coverage will be reduced by a "payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle," the $100,000 that the tortfeasor's insurer paid should offset the amount Nathaniel can recover under the underinsured motorist endorsement.

The Court rejects this argument. The policy promises to pay the listed limits of liability, not simply the listed limits of liability reduced by the amount paid by the tortfeasor. Insurers' construction of the policy would permit the policy to promise to pay the full limits of liability and yet these limits never would be paid as the amount of liability promised always would be reduced by the recovery from the other driver.[8] As *Ritchie* noted, this conflict at best creates an ambiguity that must be resolved in favor of coverage up to the amount listed in the limits of liability section if "after deducting the amounts already paid, damages equaling or exceeding those limits are still outstanding." *Ritchie,* 307 S.W.3d at 140.

Here, Nathaniel's damages were $1.5 million. Reducing those damages by the $100,000 paid by the tortfeasor leaves a remaining $1.4 million in damages, which far exceeds the $400,000 he can recover under the policies. The full limits of the limits of liability, therefore, are recoverable.[9]

provision and the same "other insurance" provision are read together they create an ambiguity that must be resolved in favor of coverage); *Ragsdale,* 213 S.W.3d at 55–57 (finding the excess insurance clause of the "other insurance" provision ambiguous when read with the anti-stacking provision, the court permitted stacking); *Niswonger,* 992 S.W.2d at 313 (accord).

*Murray v. American Family Mutual Insurance,* 429 F.3d 757 (8th Cir.2005), relied on by the insurers to support precluding stacking, did not consider the second sentence of the "other insurance" clause, which this Court finds dispositive. In any event, *Murray* was decided before *Ritchie,* which is the governing Missouri law.

8. This is because, if the amount recoverable under the insurance policy always is reduced by the amount collected by the tortfeasor, an

insured never could recover the entire liability limit set out in the underinsured motorist endorsement because, by definition, an underinsured motorist is someone who paid something toward the insured's damages, although not enough to satisfy those damages nor enough to exceed the insured's underinsured motorist limits.

9. The insurers also argue that the full amount of any insurance Nathaniel recovered by settling his suit against both the manufacturer and seller of the helmet should be deducted. They cite no authority that *underinsured motorist coverage* should be offset by products liability insurance that is not related to vehicles at all, and this Court rejects the suggestion that insureds basically must show that they had no opportunity to sue for tort damages unrelated to underinsured motorist coverage in order to recover on their under-

## IV. CONCLUSION

The trial court erred in granting summary judgment to the insurers. This Court finds that the tortfeasor's vehicle was an underinsured motor vehicle, the insurers failed to show that the owned-vehicle exclusion applies, the "other insurance" clause permits stacking of underinsured motorist coverage and offset is not permitted. The judgment is reversed, and the case is remanded.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE and FISCHER, JJ., concur. DRAPER and WILSON, JJ., not participating.

insured motorist coverage. Underinsured motorist coverage, like uninsured motorist coverage, refers to vehicle coverage. In any event, for the reasons just noted, offset would not be permitted.