Kevin P. **KENNEDY**, Respondent,

v.

**SAFECO INSURANCE COMPANY OF ILLINOIS**, Appellant.

No. SD 32345.

Missouri Court of Appeals,
Southern District,
Division Two.

June 24, 2013.

Application for Transfer to Supreme
Court Denied July 8, 2013.

Application for Transfer Denied
Aug. 13, 2013.

Scott R. Pettit, Aurora, for Appellant.

Kristie S. Crawford and Paula Green, Springfield, and T. Michael Ward, St. Louis, for Respondent.

DANIEL E. SCOTT, P.J.

Kevin Kennedy filed suit to stack underinsured motorist (UIM) benefits.[1] He was granted summary judgment. This was error because the policy unambiguously for-

---

1. UIM coverage and stacking are explained in *Niswonger v. Farm Bureau Town & Country Ins. Co.*, 992 S.W.2d 308, 313 (Mo.App. E.D. 1999).

bade UIM stacking. We reverse and remand.

## Procedural Background

A pickup struck Kennedy, a pedestrian, causing bodily injury damages that exceeded the driver's policy limits by more than $100,000.

A Safeco policy issued to Kennedy's parents provided UIM coverage of $50,000 per person and $100,000 per accident. The policy covered two vehicles and Kennedy, as a child residing in his parents' home, was an "insured" thereunder. Safeco paid UIM benefits of $50,000 to Kennedy, who then sued for the other $50,000 on a stacking theory. Safeco cited policy provisions against stacking. The court granted Kennedy summary judgment. Safeco appeals.

## Principles of Review

Summary judgment is often used in insurance coverage cases. *Niswonger*, 992 S.W.2d at 312. We interpret insurance policies *de novo*. *Hall v. Allstate Ins. Co.*, 407 S.W.3d 603, 606 (Mo.App. E.D.2012). UIM stacking depends upon policy language; courts enforce unambiguous anti-stacking language, but construe ambiguous terms against the insurer to allow stacking. *Ritchie v. Allied Property & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009). We interpret policy language as would an average lay policyholder. *Id.*

## Policy Provisions

The first of three relevant policy sections is in the General Provisions:

TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES

If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto. In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any insured.

1. This provision does not apply to Uninsured Motorists Coverage.[2]

The next two are in the policy's UIM section:

LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for "each person" for Underinsured Motorist Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death (including loss of consortium and wrongful death), arising out of bodily injury sustained by any one person in any one accident.

. . .

This is the most we will pay regardless of the number of:

1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

If more than one vehicle is insured under this policy, or if more than one policy issued to the Insured applies to the same accident, the limits applicable to Underinsured Motorist Coverage may not be stacked.

* * *

2. In contrast to UIM coverage, Missouri public policy requires that uninsured motorist coverage *"must* be allowed to be stacked, and prevents insurers from including policy language denying such stacking." *Niswonger*, 992 S.W.2d at 313.

**OTHER INSURANCE**

If there is other applicable underinsured motorist insurance available under one or more policies or provisions of coverage:

. . .

2. Any underinsured motorist insurance we provide with respect to a vehicle you do not own shall be excess over any collectible underinsured motorist insurance.

### Stacking Theory and Legal Background

Kennedy's stacking theory hinges upon the last of the above-cited provisions, the UIM "other/excess" insurance language. Some background is in order.

■ For years, courts essentially "have carved a nitch" for insureds to avoid otherwise unambiguous anti-stacking provisions. *Zemelman v. Equity Mut. Ins. Co.*, 935 S.W.2d 673, 677 (Mo.App. W.D.1996).

Where there is an "excess" or "other insurance" clause that provides the underinsured coverage is excess over all other collectible insurance at the time of the accident, a court may find that language is ambiguous when read with the limit of liability or the definition of underinsured motorist coverage *if the other insurance clause may reasonably be understood to provide coverage over and above* that collected from the tortfeasor.

*Id.* at 677–78 (our emphasis). When anti-stacking provisions seem clear in isolation, judicial focus turns to the "other insurance" clause—if ordinary persons of average understanding would reasonably interpret it as trumping the anti-stacking terms, courts may find ambiguity *between* such provisions, construe that ambiguity against the insurer, and allow stacking.[3]

"This is not to say that the presence of an other insurance clause always renders a policy ambiguous." *Seeck*, 212 S.W.3d at 134 n. 3. Recent cases indicate that a policy and its anti-stacking provisions (*i.e.*, the terms that *operate* to preclude stacking) may be clarified by adding an express no-stacking *disclaimer.*

For example, the UIM endorsement in *Lynch v. Shelter Mut. Ins. Co.*, 325 S.W.3d 531 (Mo.App. S.D.2010), not only had anti-stacking provisions, but expressly stated that

the limits for this Coverage may not be added to, combined with, or stacked onto the limits of other underinsured motorists coverage to determine the total limit of underinsured motorists coverage available to any insured for any one accident.

*Id.* at 534, 539–40. There was no reasonable uncertainty as to this meaning, as even plaintiff Lynch conceded—it "clearly disallows stacking in any and every instance." *Id.* at 540. Thus, despite the other insurance clause, it was unreasonable to think that ordinary persons of average understanding would "be confused as to whether stacking is ever allowed under the policy." *Id.* at 541. We affirmed the trial court's refusal to stack. *Id.*

Our Western District noted this disclaimer's significance when it considered a comparable policy without such language. "[W]e find the policy language in *Lynch* (i.e., a Shelter policy) distinguishable—particularly as it relates to anti-stacking of

---

**3.** *See, e.g., Manner v. Schiermeier*, 393 S.W.3d 58, 65 (Mo. banc 2013); *Ritchie*, 307 S.W.3d at 137–38; *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132–33 (Mo. banc 2007); *Long v. Shelter Ins. Companies*, 351 S.W.3d 692, 696– 701 (Mo.App. W.D.2011); *Chamness v. Am. Family Mut. Ins. Co.*, 226 S.W.3d 199, 204–07 (Mo.App. E.D.2007); *Niswonger*, 992 S.W.2d at 315–17.

UIM coverage—from that in the policies presently under review (i.e., also Shelter policies)." *Long*, 351 S.W.3d at 700.

In *Lynch*, a passenger negligently injured in a single-car accident in an underinsured vehicle brought an action against her own insurer (i.e., Shelter) seeking UIM benefits under four separate policies.... However, the UIM "Limit of Liability" provision in the insurance policy examined in *Lynch* specifically stated that "the limits for this Coverage may not be added to, combined with, or *stacked* ... onto the limits of other underinsured motorists coverage to determine the total limit of underinsured motorists coverage available to any insured for any one accident." This *Lynch* UIM endorsement specific anti-stacking provision is absent from the UIM endorsements of the Longs' policies in the present case.

*Id.* (internal citation omitted). *See also Hall*, 407 S.W.3d at 609–10 (reversing a judgment for stacking where policy stated "THAT NO STACKING OR AGGREGATION OF UNDERINSURED MOTORISTS INSURANCE WHATSOEVER WILL BE ALLOWED BY THIS POLICY.").

### The Present Case

■ This Safeco policy has not one but two no-stacking disclaimers. The first, in the policy's General Provisions, states:

In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any insured.

The second is in the UIM section, following the anti-stacking provisions. It states:

If more than one vehicle is insured under this policy, or if more than one policy issued to the insured applies to the same accident, the limits applicable to Underinsured Motorist Coverage may not be stacked.

In *Lynch*, given a single no-stacking disclaimer, there was no reasonable uncertainty that stacking was "clearly disallow[ed] ... in any and every instance." 325 S.W.3d at 540. Here, Safeco adds a second disclaimer specifically reiterating that UIM coverage "may not be stacked." Even more so than in *Lynch*, therefore, ordinary persons of average understanding could not reasonably be confused into thinking that UIM stacking "is ever allowed under the policy." *Id.* at 541.

Kennedy points to the other insurance clause and cases saying that when "an insurance policy promises the insured something at one point but then takes it away at another, there is an ambiguity." *Chamness*, 226 S.W.3d at 204. His argument illustrates the risk of focusing more on case law than on policy language. Other decisions "are not dispositive in the absence of identical policy language." *Long*, 351 S.W.3d at 702. To determine whether a policy is ambiguous, a court examines the document's four corners. *Spellman v. Sentry Ins.*, 66 S.W.3d 74, 76 (Mo.App. E.D.2001).

■ The lay reader of this Safeco policy encounters, in order:

1. Broad, general anti-stacking provisions;
2. An express disclaimer of stacking in general;
3. UIM-specific anti-stacking provisions;
4. An express no-stacking disclaimer as to UIM specifically; and
5. Common-form other insurance language.

Whatever a layperson makes of #5—which does not mention "stacking" at all—

he cannot *reasonably* think that it overrides #1, #2, #3, and #4 preceding it. Courts do not interpret insurance provisions in isolation, but the policy as a whole. *Wasson v. Shelter Mut. Ins. Co.*, 358 S.W.3d 113, 121 (Mo.App. W.D.2011) (citing *Ritchie*, 307 S.W.3d at 135; *Seeck*, 212 S.W.3d at 133). "'While ambiguity exists if the term is *"reasonably* open to different constructions,"' . . . an *unreasonable* alternative construction will not render the term ambiguous.'" *Id.* (quoting *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. banc 2008); *Seeck*, 212 S.W.3d at 132). Courts will not distort policy language to create ambiguity where none exists; perceived contradictions should be harmonized if reasonably possible. *Wasson*, 358 S.W.3d at 121.

The idea that insurers cannot "promise, then take away" may fit cases like *Chamness*, but not this one. Stacking was not promised or even suggested. To the contrary, it was plainly and repeatedly disclaimed. Safeco could not take away what it never promised or gave.

### Conclusion

We need not reach Point II or Safeco's other arguments for reversal.[4] We reverse the summary judgment and remand the case for further proceedings consistent with this opinion.[5]

JEFFREY W. BATES, J., and DON E. BURRELL, C.J., concur.

---

4. Including *Jordan v. Safeco Ins. Co.*, 2012 WL 5390236 (E.D.Mo. Nov. 5, 2012), a seemingly "all-fours" Missouri federal case that rejected stacking. We express no opinion about that case.

5. We decline Safeco's invitation to enter judgment in its favor. Safeco never sought summary judgment below; its initial request for judgment as a matter of law is better presented to the trial court on remand. *See Pagan v. City of Kennett*, 427 S.W.2d 251, 252 (Mo. App.1968).