

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

DYLAN MARTIN, BY AND THROUGH
HIS NATURAL MOTHER AND NEXT
FRIEND ROSE MARTIN, AND ROSE
AND ROY MARTIN,

        Appellants,

vs.

AUTO OWNERS INSURANCE
COMPANY,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

WD78545

Opinion filed:  January 12, 2016

## APPEAL FROM THE CIRCUIT COURT OF PETTIS COUNTY, MISSOURI
## THE HONORABLE ROBERT L. KOFFMAN, JUDGE

Before Division One:  Anthony R. Gabbert, Presiding Judge,
Victor C. Howard, Judge and Cynthia L. Martin, Judge

Dylan Martin and his parents Rose and Roy Martin appeal from the trial court's grant of summary judgment to Auto Owners Insurance Company (hereinafter "Owners") on the issue of stacking the underinsured motorist coverages in the Martins' automobile insurance policy.  The Martins claim that ambiguities in the language of the policy should be construed against Owners and that the policy should be interpreted to allow the stacking of underinsured motorist coverages.

We reverse the trial court's grant of summary judgment to Owners.

**Background**

This action arises out of an automobile accident that occurred in 2010 in Pettis County, Missouri. Dylan Martin was crossing a rural highway to board a school bus, when a vehicle driven by Laura Loyd struck him. Ms. Loyd was insured by State Auto Insurance Company (hereinafter "State Auto"). Dylan suffered bodily injury and there is no dispute that the amount of damages he suffered exceeds $300,000.

At the time of the collision, Ms. Loyd had a State Auto automobile liability insurance policy with a bodily injury liability limit of $100,000, which was paid to Dylan as a result of his personal injuries.

At the time of the accident, the Martins held an automobile insurance policy issued through Owners (hereinafter "the Policy"), that included underinsured motorist (hereinafter "UIM") coverage. The Policy insured three automobiles owned by the Martins. The Policy declaration pages list UIM coverage separately under each vehicle and show a separate premium charged for each vehicle. The Policy declarations pages also list "$100,000 person/$300,000 occurrence" under each vehicle and next to each of the three separate UIM premiums.

The parties do not dispute that Ms. Loyd was an underinsured motorist under the terms of the Policy. Also, the parties do not dispute that Dylan was "occupying" an "other automobile" within the definitions of the Owners UIM coverage at the time he was struck by Ms. Loyd. Dylan made an UIM claim to Owners. Thereafter, Dylan and Owners entered into a settlement agreement that was approved by the trial court, which provided that Owners agreed to pay Dylan $100,000 UIM benefits. Then the Martins filed a declaratory judgment action against Owners, requesting that the trial court declare that they were entitled to additional UIM coverage based on the Policy covering three vehicles, each providing UIM coverage of $100,000 per person.

2

Owners filed a motion for summary judgment arguing the Policy's terms unambiguously limit the Martins to a maximum UIM payment of $100,000.

The relevant portion of the UIM limits of liability and "anti-stacking" language in the Policy reads:

4. LIMIT OF LIABILITY

    a. Subject to the limits of liability stated in the Declarations for Underinsured Motorist Coverage, **our** limit of liability shall not exceed the lowest of:

        (1)    The amount by which the Underinsured Motorist Coverage limits stated in the Declarations exceed the total limits of all **bodily injury** liability bonds and liability insurance policies available to the owner or operator of the **underinsured automobile**; or

        (2)    The amount by which compensatory damages, including but not limited to loss of consortium, because of **bodily injury** exceed the total limits of such **bodily injury** liability bonds and liability insurance policies.

    b.  The Limit of Liability is not increased because of the number of:
      (1) **Automobiles** shown or premiums charged in the Declarations;
      (2) Claims made or **suits** brought**;**
      (3) Persons injured; or
      (4) **Automobiles** involved in the **occurrence**

   . . . .

    e. When Underinsured Motorist Coverage applies to two or more **automobiles**, the limit of liability stated for "each person" shall not be stacked to provide higher limits of liability than would apply if coverage applied to only one **automobile**.

The UIM other insurance provision reads:

5. OTHER UNDERINSURED MOTORIST COVERAGE

The Underinsured Motorist Coverage provided by this endorsement to persons **occupying your automobile** shall be primary, and with regard to persons **occupying** any other **automobile**, such coverage shall be excess over all other applicable underinsured motorists coverage. However, if there is other underinsured motorist coverage which applies on a primary basis to **your automobile**, **we** shall pay only **our** share of the damages. **Our** share shall be the ratio of **our** limit of liability to the total limits of all underinsured motorist coverage which applies. Total damages payable shall be considered not to

3

exceed the limit of the applicable policy which has the highest limit of liability for underinsured motorist coverage.

The trial court granted summary judgment in favor of Owners, reasoning that the Policy

leaves no question as to the limits of liability regardless of how the premiums were charged. The policy clearly and unequivocally reads that the charging of multiple premiums does not operate to permit stacking. The anti-stacking language in the UIM endorsement reinforces that conclusion. At the time of the purchase of the policy, the insured could not have reasonably had any other understanding.

**Standard of Review**

This appeal involves the propriety of the trial court's grant of summary judgment based on the interpretation of an insurance contract. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *ITT Commercial Finance v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We will review the factual record in the light most favorable to the party against whom the trial court granted summary judgment. *Niswonger v. Farm Bureau Ins.*, 992 S.W.2d 308, 312 (Mo. App. E.D. 1999). The propriety of a summary judgment is purely a question of law. *Id*. As such, our review is essentially *de novo*. *Id*. Trial courts frequently use summary judgment in the context of insurance coverage disputes. *Id*. The interpretation of an insurance contract is a question of law. *Id*. When interpreting an insurance policy, we read the policy as a whole. *E. Attucks Cmty. Hous., Inc. v. Old Republic Sur. Co.*, 114 S.W.3d 311, 319 (Mo. App. W.D. 2003).

**Appeal**

The Martins argue the trial court erred in finding that they could not stack the underinsured motorist coverage for the Martins' three insured vehicles, because the Policy's

other insurance provision creates an exception to the Policy's anti-stacking language and creates an ambiguity in the Policy as a whole, which must be construed in favor of the insured.

Stacking is defined as an insured's ability to obtain benefits either from more than one insurance policy, as when the insured has two or more separate vehicles under separate policies, or from multiple coverages within a single policy, as when an insured has one policy that covers more than one vehicle. *Niswonger*, 992 S.W.2d at 313. "UIM coverage [is] in the nature of floating, personal accident insurance rather than insurance on a particular vehicle, and thus follow[s] the insured individual wherever he goes." *Id.* Unlike uninsured motorist coverage, Missouri has no statutory requirements for UIM coverage and no public policy requirement that UIM coverage be stacked. *Id*. at 313-14. We determine the ability to stack UIM coverages by the terms of the contract entered into between the insurer and the insured. *Id*. at 314. If policy language is unambiguous in forbidding stacking, we will not create extra coverage. If policy language is ambiguous, we will construe the policy in favor of the insured and allow stacking. *Id.*

In interpreting an insurance policy, we attempt to "give meaning to all terms and, where possible, harmonize those terms in order to accomplish the intention of the parties." *Henges Mfg., LLC v. Amerisure Ins. Co.*, 5 S.W.3d 544, 545 (Mo. App. E.D. 1999). "An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract." *Stewart v. Liberty Mut. Fire Ins. Co.*, 349 S.W.3d 381, 386 (Mo. App. W.D. 2011) (internal quotation omitted). If an insurance policy promises something at one point in the contract but then takes it away at another, there is an ambiguity. *Id.* Specifically, Missouri courts have long followed the rule that "where the other insurance clause appears to provide coverage that the limitation of liability clause is argued to prohibit; any resulting ambiguity will

5

be construed against the insurer." *Manner v. Schiermeier*, 393 S.W.3d 58, 64 (Mo. banc 2013) (quoting *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132 (Mo. banc 2009)).

In *Ritchie*, the limit of liability section of the underinsured policy contained a provision stating that the per person limit of liability listed in the declarations was the most the insurer would pay "regardless of the numbers of . . . [v]ehicles or premiums shown in the [d]eclarations." 307 S.W.3d at 136-37. The policy in *Ritchie* also contained an other insurance clause, which stated in part "Any coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorist coverage." *Id.* at 137. The *Ritchie* court found that when the policy was read as a whole, the policy's anti-stacking provisions, which might normally and otherwise apply, could be reasonably interpreted as not applying in the special situation where the insured is injured while occupying a non-owned vehicle and there are multiple underinsured motorist coverages. *Id.* at 137-38. The resulting ambiguity was resolved in favor of the insureds to allow stacking of the underinsured motorist coverage. *Id.* at 138-39.

In *Manner*, each of the insured's four policies contained a "Two or More Cars Insured" clause providing in relevant part that "The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy." 393 S.W.3d at 64. The underinsured motorist endorsements to each policy contained an other insurance clause that provided that "any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance." *Id.* at 65. The *Manner* court found the analysis in *Ritchie* dispositive on the issue of stacking and held that the above-quoted portion of the other insurance clause "appears to an 'ordinary person of average understanding' to permit stacking because it states that 'any coverage we provide with respect to

6

a vehicle you do not own shall be excess over any other collectible underinsured motorist coverage.'" *Id.* at 66. The court further held that the inconsistency between that provision and the "Two or More Cars Insured" provision resulted in an ambiguity that must be resolved in favor of the insured, and therefore held that stacking was permitted under the four policies. *Id.*

Subsequent to *Ritchie* and *Manner*, the Southern District of this Court reasoned that the presence of an other insurance clause does not always render a policy ambiguous. *Kennedy v. Safeco Ins. Co. of Ill.*, 413 S.W.3d 14, 16 (Mo. App. S.D. 2013) (quoting *Zemelman v. Equity Mut. Ins. Co.*, 935 S.W.2d 673, 677 (Mo. App. W.D. 1996)). The *Kennedy* court held that "a policy and its anti-stacking provisions (*i.e.*, the terms that *operate* to preclude stacking) may be clarified by adding an express no-stacking *disclaimer*." *Id.* (emphasis in original). The policy in *Kennedy* contained general provisions, stating in part: "In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any insured." *Id.* at 17. In the UIM section it stated "If more than one vehicle is insured under this policy, or if more than one policy issued to the insured applies to the same accident, the limits applicable to Underinsured Motorist Coverage may not be stacked." *Id.* The other insurance provision stated: "If there is other applicable underinsured motorist insurance available under one or more policies or provisions of coverage: … 2. Any underinsured motorist insurance we provide with respect to a vehicle you do not own shall be excess over any collectible underinsured motorist insurance." *Id.* at 16. The *Kennedy* court rejected the insured's argument that cases ruling in favor of stacking for the insured pursuant to the rule that a policy promising something at one point then taking it away at another results in an ambiguity were controlling because of the other insurance clause. *Id.* at 17.

7

The *Kennedy* court reasoned that other decisions are not dispositive in the absence of identical policy language, and that the focus must first be on policy language within document's four corners rather than primarily on case law. *Id.* The court observed that the policy before it contained general anti-stacking provisions, an express anti-stacking disclaimer in its general provisions, UIM-specific anti-stacking provisions, a UIM-specific express anti-stacking disclaimer, and "[c]ommon-form" other insurance language, "which does not mention 'stacking' at all[.]" *Id.* at 17-18. It reasoned that a layperson could not reasonably think that "[c]ommon-form other insurance language" would override the anti-stacking provisions and disclaimers preceding it. *Id.* Rather than finding the contradictory policy language ambiguous, the *Kennedy* court decided that to find an ambiguity in the policy would be to "distort policy language to create ambiguity where none exists[.]" *Id.* Rather than construing the inconsistent provisions of the policy in favor of the insured, the *Kennedy* court "harmonized" the "perceived contradictions" in favor of the insurance company and concluded that stacking was not permitted. *Id.*

We see no substantive difference between the policy in *Kennedy* and those analyzed in *Ritchie* and *Manner*. The court in *Kennedy* based its decision in large part on the theory that more "no-stacking" clauses overcome the ambiguity created by an other insurance provision that does not specifically mention stacking. The rule announced in *Ritchie* and *Manner* remains in effect: where there is an ambiguity created between an other insurance provision of excess coverage and anti-stacking provisions that attempt to take such coverage away, the ambiguity is to be construed against the insurer, and the policies therefore must be allowed to be stacked where the facts of the case would bring the insured within the scope of coverage under the other insurance clause. 307 S.W.3d at 138-39; 393 S.W.3d at 66.

8

Here, the subject Policy contains an anti-stacking provision, an express anti-stacking disclaimer, and an other insurance provision, in that order, all appearing in the UIM endorsement. The express anti-stacking disclaimer states that when UIM coverage "applies" to two or more automobiles, the limits shall not be stacked to provide higher liability limits than would apply for only one automobile. Read in isolation, this disclaimer is unambiguous. However it is well-settled precedent that each policy must be interpreted as a whole. *Manner*, 393 S.W.3d at 65. In this context, the disclaimer directly conflicts with the very next provision regarding other insurance. The other insurance provision indicates that the very UIM coverage just mentioned, that which "applies" to two or more vehicles, when applied specifically to persons occupying any other automobile, "shall be excess over all other *applicable* underinsured motorists coverage." (emphasis added).

> Just as in *Ritchie*, a reasonable reading of the provisions in the instant Policy
>
> suggest that the policy's anti-stacking provisions, which might normally and otherwise apply, do not apply in the special situation where the insured is injured while occupying a non-owned vehicle. Rather, an ordinary person of average understanding reasonably could interpret this other insurance provision to mean that when an injured insured is occupying a non-owned vehicle and there are multiple underinsured motorist coverages, as it is conceded there are here, then each of the underinsured motorist coverages are excess to the other, and, therefore, may be stacked.

307 S.W.3d at 137-38 (internal quotations omitted). We find the rule articulated in *Ritchie* and *Manner* applicable to the present case: the promise of excess coverage in the other insurance provision read in conjunction with the anti-stacking provision and disclaimer purporting to take away such coverage create an ambiguity to be resolved in favor of the insured, who, without contest, was a person "occupying any other automobile" at the time of his injury. Stacking of the Martins' underinsured motorist coverage for each of their three vehicles insured by the Owners

9

Policy is permitted. The trial court erred in granting summary judgment in favor of Owners. The judgment is reversed and the matter remanded for proceedings consistent with this opinion.


_____
VICTOR C. HOWARD, JUDGE


All concur.

10