**Joyce MARRS, Plaintiff-Appellant,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Respondent.**

No. SD 34651

Missouri Court of Appeals,
Southern District,
Division One.

Filed: July 25, 2017

Michael J. Wyatt of Hutchinson, KS, for Appellant.

John D. Hammons, Jr. and Jessica Hill of Springfield, MO, for Respondent.

JEFFREY W. BATES, P.J.

Joyce Marrs (Marrs) appeals from a summary judgment granted to American Family Mutual Insurance Company (American Family) that denied Marrs' re-

quest to stack underinsured motorist (UIM) coverage in five American Family policies (Policies).[1] Marrs' request to stack the UIM coverages was based upon alleged ambiguities in the Policies' language. The trial court concluded that the Policies provided no UIM benefits to Marrs because: (1) there were no ambiguities in the Policies' anti-stacking provisions; and (2) there was no ambiguity in the Policies' definition of an underinsured motor vehicle.

Marrs presents one point for decision. She contends the trial court erred in granting summary judgment to American Family because: (1) the Policies' definition of an underinsured motor vehicle is ambiguous; and (2) since the duplicate underinsured motor vehicle clauses are excess to each other, the Policies should be stacked. Because we agree with the trial court that there are no ambiguities in the Policies' anti-stacking and UIM definitional provisions, we affirm.

## Factual and Procedural Background

Marrs is the widow of Teddy Marrs (Decedent), who died from injuries he sustained in a motor vehicle accident while riding as a passenger in a vehicle (Vehicle) driven by Shelby Slinkard (Driver). The Vehicle was owned by Decedent's daughter, Tammy Grider and her husband Toby Grider (the Griders), and insured by American Family via a policy that provided $100,000 in liability coverage for bodily injury. Driver was insured by an auto insurance policy with Progressive Insurance Company that provided $25,000 in liability coverage for bodily injury. Marrs settled her claims against Driver for $125,000, the cumulative policy limits of the two liability policies that provided coverage to her.

At the time of Decedent's death, he was residing with Marrs, Decedent's son Timothy R. Marrs (Son), and Decedant's grandson Dylan C. Link (Grandson). Marrs, Son and Grandson were named, individually or in combination, as insureds in the five Policies with UIM limits totaling $450,000.[2] In Marrs' petition, she asked the trial court to stack each of the UIM coverage limits and enter judgment in her favor for $450,000.

Thereafter, American Family filed a motion for summary judgment. According to

---

1. Stacking "refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308, 313 (Mo. App. 1999). "The purpose of underinsured motorist coverage is to provide insurance coverage for insureds who have been bodily injured by a negligent motorist whose own automobile liability insurance coverage is insufficient to pay for the injured person's actual damages." *Wasson v. Shelter Mut. Ins. Co.*, 358 S.W.3d 113, 117 (Mo. App. 2011).

2. The Policies consist of the following: (1) Policy number 0720-3506-05-74-FPPA-MO identifying Marrs as the named insured and providing $100,000 in UIM coverage; (2) Policy number 0720-3506-07-80-FPPA-MO identifying Marrs and Son as the named insureds and providing $100,000 in UIM coverage; (3) Policy number 0720-3506-09-86-FPPA-MO identifying Son as the named insured and providing $100,000 in UIM coverage; (4) Policy number 0720-3506-11-63-FPPA-MO identifying Grandson as the named insured and providing $100,000 in UIM coverage; and (5) Policy number 0720-3506-12-66-SCYC-MO identifying Grandson as the named insured and providing $50,000 in UIM coverage. The Policies all state that "[i]nsured person or insured persons means … you or a relative." "Relative means a person living in your household, related to you by blood, marriage or adoption." (bold emphasis in original). There is no dispute that Marrs is an insured as defined by the Policies.

American Family, the UIM coverages could not be stacked because of the unambiguous anti-stacking provisions contained in each of the Policies. The trial court agreed with American Family and granted its motion for summary judgment. This appeal followed.

### Standard of Review

"Whether to grant summary judgment is an issue of law that this Court determines *de novo.*" *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). "The interpretation of an insurance policy is a question of law that this Court also determines *de novo.*" *Id.*; see also *Swadley v. Shelter Mut. Ins. Co.*, 513 S.W.3d 355, 357 (Mo. banc 2017). In construing the terms of an insurance policy, we apply the meaning that would be attached by an ordinary person of average understanding if purchasing insurance and resolve ambiguities in favor of the insured. *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009). "[A]mbiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Seeck*, 212 S.W.3d at 132.

■ With respect to UIM coverage, stacking depends upon policy language. *Ritchie*, 307 S.W.3d at 135. "[I]f the policy language is unambiguous in disallowing stacking, the anti-stacking provisions are enforceable." *Id.* If, however, the policy language is ambiguous as to stacking, it must be construed against the insurer, and stacking will be allowed. *Id.* "Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Id.*; see *Seeck*, 212 S.W.3d at 133. The burden is on the insured to show coverage is provided under the policies at issue. *Manner v. Schiermeier*, 393 S.W.3d 58, 63 (Mo. banc 2013).

### Discussion and Decision

■ In Marrs' single point, she contends the trial court erred in granting summary judgment to American Family. Marrs' arguments for reversal are based upon the premise that the Policies' definition of an "underinsured motor vehicle" is ambiguous.

The Policies each contain the same June 2014 UIM endorsement (the UIM Endorsement), which consists of sections A-E.[3] In Section A, the term "underinsured motor vehicle" is defined:

> **Underinsured motor vehicle** means a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides **bodily injury** liability limits less than the limits of liability of this underinsured motorists coverage.

Section B.1 contains the general UIM insuring agreement. It states:

> Subject to the provisions contained within each section of this endorsement, **we** will pay compensatory damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle**. The amount of compensatory damages we will pay will never exceed the underinsured motorist coverage limits of liability shown on the Declarations minus any payment or reduction set forth in Section D.3. LIMITS OF LIABILITY.

Section D is the UIM "LIMITS OF LIABILITY" section. Provision D.2 contains the anti-stacking language:

> The limits of liability for this coverage minus any reductions or offsets set forth

---

3. Section C, which lists exclusions, is not at issue and need not be addressed.

in this endorsement are the most that **we** will pay regardless of the number of:

a. **insured persons;**

b. claims made;

c. claimants;

d. vehicles or premiums shown in the Declarations;

e. vehicles involved in the accident; or

f. policies issued to **you** or a **relative** by **us** or any other member company of the **American Family Insurance Group of companies.**

The limits of liability shown in the Declarations may not be added, combined or stacked with the limits shown in the Declarations for any other policy to determine the maximum limits available for each person or for each occurrence. THIS MEANS THAT NO STACKING, COMBINATION OR AGGREGATION OF UNDERINSURED MOTORIST COVERAGES IS ALLOWED UNDER THIS POLICY.

In relevant part, Section D.3 states: "The limits of liability of this coverage will be reduced by: a. all payments made by or on behalf of the owner or operator of the **underinsured motor vehicle** or organization which may be legally liable." Section E contains the UIM coverage's "OTHER INSURANCE" provisions: In relevant part, it states:

> The other insurance language is subject to the anti-stacking provisions in Section D.2. LIMITS OF LIABILITY.
>
> 1. Other Policies Issued by **Us**
>
> For the same motor vehicle accident, if there is underinsured motorist coverage under more than one policy issued to **you** or a **relative** by **us** or any member company of the **American Family Insurance Group of companies**, only the policy with the highest underinsured motorist coverage limits of liability will provide underinsured motorist coverage

subject to the reductions provided for in the "Limits of Liability" section. If two or more such policies have the same highest underinsured motorist coverage limits of liability, then only one such policy chosen by **us** will provide underinsured motorist coverage subject to the reductions provided for in the "Limits of Liability" section.

> 2. Other Coverage From Other Sources
>
> If there are any limits of liability remaining after applying the reductions provided for in the "Limits of Liability" section of this endorsement and if there is underinsured motorist insurance from a policy not issued to **you** or a **relative** by **us** or any other member company of the **American Family Insurance Group of companies**, the following applies: . . .
>
> b. for an **insured person** while **occupying** a vehicle **you** do not own, coverage under this endorsement is excess over all other underinsured motorist insurance provided by all other insurance policies.

(Underlining added; bold emphasis in original.)

Marrs argues that the underlined "excess" provision above, which applies to a non-owned vehicle like the Griders' Vehicle here, creates an ambiguity in the definition of "underinsured motor vehicle." According to Marrs, the underlined provision provides "excess coverage once coverage from other insurance policies has been exhausted" while "other clauses indicate that such coverage is not provided," creating an ambiguity that should be interpreted in her favor. As support for that argument, Marrs relies upon *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 133 (Mo. banc 2007) (finding ambiguity when policy "promises something at one point and takes it away at another" and resolving in

favor of coverage for the insured). Marrs then argues that: (1) the Policies should be read to include the Vehicle within the underinsured motor vehicle definition; and (2) "as the duplicate underinsured motor vehicle clauses are excess to each other," the Policies may be stacked per *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 138 (Mo. banc 2009) (holding that when "an injured insured is occupying a non-owned vehicle and there are multiple underinsured motorist coverages ... then each of the underinsured motorist coverages are excess to the other, and, therefore, may be stacked").[4]

■ American Family, on the other hand, correctly points out that Marrs' argument is based upon an incorrect approach to reviewing the relevant policy provisions. "In determining what coverage is provided for purposes of determining the applicability of underinsured motorist coverage, a court *first* must determine whether the policy permits coverage from multiple policies to be stacked." *Manner v. Schiermeier*, 393 S.W.3d 58, 64 (Mo. banc 2013) (italics added). "If so, then the coverage provided by the policies is their stacked amount, not the amount each would provide if considered separately, and it is the stacked amount that must be compared against the insurance coverage of the tortfeasor." *Id.* In *Manner*, our Supreme Court explained that:

This approach is consistent with the fact that one of the purposes of underinsured motorist coverage is to provide the insured with the coverage the insured purchased when the excess amount is necessary to cover damages. When insurance policies permit stacking, such as [insured] argues is the case here, the coverage contracted for is the total of the policy limits when stacked.

*Id.* Therefore, before reaching the question about whether the Vehicle was underinsured, we must first determine whether stacking is permitted by the Policies.

We conclude that the anti-stacking provisions in the UIM Endorsement unambiguously prohibit stacking and are distinguishable from the policy language at issue

4. In *Ritchie*, the relevant provisions included the following:

**LIMIT OF LIABILITY**
A. *The limit of liability shown in the Declarations for each person for Underinsured Motorists coverage is our maximum limit of liability for all damages for case, loss of services, or death arising out of "bodily injury" sustained by any one person in any one accident.* Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the numbers of:
1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.
B. *The limit of liability shall be reduced by all sums: ... [p]aid because of "bodily inju-*

*ry' or by or on behalf of persons organizations who may be legally responsible ...*
**OTHER INSURANCE**
*If there is other applicable underinsured motorists coverage available under one or more policies or provisions of coverage:*
1. *Any recovery for damages may equal but not exceed the highest applicable limit for any one vehicle under this insurance or other insurance providing coverage on either a primary or excess basis.* In addition, if any such coverage is provided on the same basis, either primary or excess, as the coverage we provided under this endorsement, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits for coverage provided on the same basis.
2. *Any coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorist coverage.*
*Id.* at 136-37.

in *Ritchie*. There, the anti-stacking language was limited to a single provision of the "Limits of Liability" section and did not even include the term "stacking." Unlike *Ritchie*, section D.2 of the Policies included a statement that the limits of liability "may not be added, combined or stacked[,]" followed by an all-capped section that: (1) again stated there was "NO STACKING"; (2) included synonyms for stacking like "combination" and "aggregation" as a way to clarify what constitutes stacking, for insureds who might not be familiar with that term; and (3) highlighted the importance of the section by using all capital letters. In our view, this language unambiguously informs an ordinary person of average understanding who purchased the Policies that stacking was prohibited. *See, e.g., Hall v. Allstate Ins. Co.*, 407 S.W.3d 603, 610 (Mo. App. 2012) (concluding that similar all-capped, no-stacking clause "written in a way to draw attention to itself, is clear, direct, straightforward, and uniformly consistent with all the other language in the policy that unambiguously and unequivocally prohibits the stacking of coverages").[5]

In addition, the "Other Insurance" provision in *Ritchie* that created the ambiguity with the anti-stacking provision did not make it clear that the reductions provided for in the "Limits of Liability" section also applied to the "Other Insurance" provision. That is not true of the Policies at issue here. The Section E "OTHER INSURANCE" provision begins by stating that "[t]he *other insurance language is subject to the anti-stacking provisions in Section*

*D.2. LIMITS OF LIABILITY.*" (Italics added.)

Finally, Marrs' argument that the Section E "excess" provision creates an ambiguity when the insured person was injured "while occupying a vehicle [the insured does] not own" ignores the first sentence of that provision. It sets forth two conditions controlling when that subsection applies:

> [i]f there are any limits of liability remaining after applying the reductions provided for in the "Limits of Liability" section of this endorsement <u>and</u> if there is underinsured motorist insurance from a policy <u>not</u> issued to **you** or a **relative** by **us** or any other member company of the **American Family Insurance Group of companies**, the following applies . . . .

(Underlining added; bold emphasis in original.) Here, neither of those conditions is met.

First, there would not be any limits of liability remaining after applying the reductions provided for in the "Limits of Liability" section. That section prohibits stacking and provides for a set-off of $125,000, the amount Marrs already received from Driver's and Vehicle's liability insurance coverages. Because the most UIM coverage that Marrs could recover under one of the Policies at issue is $100,000 (assuming the Vehicle was underinsured), there would be nothing left after the $125,000 set-off.

Second, all of the Policies here were issued to Marrs or a relative and were all

---

5. The Court in *Hall* also distinguished the "excess" provision in its policy from that in *Ritchie*, which provided the coverage "shall be excess over any other collectible underinsured motorist coverage." *Ritchie*, 307 S.W.3d at 137. In *Hall*, like the case at bar, the excess provision stated that coverage is excess to "underinsured motorists or similar type coverage under *another* policy." *Hall*, 407 S.W.3d at 612 (italics added). The *Hall* court concluded that this policy language is different because the "policy language refers to underinsured motorist coverage in some other, separate policy, not other coverage within the same policy, as was the case in *Ritchie*." *Id.*

issued by American Family or a member company of the American Family Insurance Group of companies. Because the record shows that the conditions of Section E.2 concerning "Other Coverage From Other Sources" have not been met, Marrs has failed to show the subsection at issue, E.2.b—the "excess" provision—even applies. *See* *Daughhetee v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 1128, 1133-34 (8th Cir. 2014) (applying Missouri law and enforcing antecedent language restricting excess coverage because the policy unambiguously precluded stacking of UIM coverage limits); *Hall*, 407 S.W.3d at 610 (noting that insureds ignored a provision that immediately preceded the relied-upon sentence and that "[t]o an extent, [insureds] look past portions of the policy and read the sentence in isolation").

Viewing the Policies as a whole, as we must, we conclude that an ordinary person of average understanding would understand the clear and repetitive anti-stacking provisions contained in each of the Policies in this case. Stacking was not promised or even suggested. To the contrary, it was plainly and consistently disclaimed. American Family "could not take away what it never promised or gave." *Kennedy v. Safeco Ins. Co. of Illinois*, 413 S.W.3d 14, 18 (Mo. App. 2013). Because the Policies do not stack, the Vehicle does not meet the definition of an underinsured motor vehicle, in that the cumulative liability insurance limits were greater than the UIM limits of liability. In short, neither the anti-stacking nor the UIM definitional provisions in the Policies were ambiguous. Accordingly, the trial court did not err by granting summary judgment to American Family. Point 1 is denied.

The judgment of the trial court is affirmed.

DON E. BURRELL, J.—CONCUR

MARY W. SHEFFIELD, C.J.—CONCUR